## C. C. QUILLIN v. THE STATE.

### No. 4055. Decided May 17, 1916.

1.—Misapplication of Public Funds—Indictment—Principals—Statutes Construed—Repeal by Implication—Words and Phrases.

Where defendant was indicted as a principal with his co-defendant, and the indictment charged the latter with wilfully and fraudulently failing to pay to the treasury of the State certain tax money as tax collector, the indictment being under articles 96 and 97, Penal Code, and not under articles 107 or 144, Penal Code, and strictly complied with and was in conformity to said articles 96 and 97, which prescribe an entirely different offense from that provided for in either of said articles 107 or 144, and that said different articles of the Code deal with at least three different classes of collectors, the indictment was sufficient, and the contention that the indictment should allege the failure of said collector to pay the money over to the State Treasurer instead of the State

Treasury, and that said articles 96 and 97 are repealed by implication, is untenable.

### 2.—Same—Indictment—Tax Collector—Principal.

Where defendant was indicted as a principal with a county tax collector for wilfully and fraudulently failing to pay into the treasury of the State at the time prescribed by law certain tax money belonging to the State which he had collected by virtue of his office, the contention of defendant that the offense denounced applied to a tax collector only and could not be committed by anyone except the tax collector or persons employed about his office, and that an outside party could not be a principal with such tax collector in the commission of said offense is untenable, as the law of principals is specifically applicable to every offense where another than the actual doer acts together with the doer in committing the offense. Following Campbell v. State, 63 Texas Crim. Rep., 595, and other cases.

### 3.—Same—Quoting Cases in Opinion—Practice on Appeal.

Where, in the original opinion, it was stated that a certain case was considered by this court, but not cited in appellant's brief, and this proved to be an inadvertence but in no possible way affected any question in the case, there was no reversible error.

### 4.—Same—Indictment—Principals—Pleading.

Where defendant was indicted together with the tax collector for wilfully and fraudulently failing to pay into the treasury of the State certain tax money received by said collector, etc., the contention that the indictment is fatally defective because it does not allege what defendant said or did which would make him a principal, is unsound, as it is not necessary to allege the facts relied upon to show the defendant to be a principal, although the offense itself may not have been actually committed by him. Following Williams v. State, 42 Texas, 392, and other cases.

### 5.—Same—Rule Stated—Principals—Pleading—Proof.

It is unnecessary to allege in the indictment the particular facts which constitutes each of the defendants a principal, and under a general indictment charging the defendant or defendants directly with the commission of the offense, any act which makes him or them a principal or principals may be proved. Following Mills v. State, 13 Texas Crim. App., 487, and other cases.

### 6.—Same—Rule Stated—Pleading—Principals.

The acts which make the defendant a principal need not be alleged in the indictment, and a principal offender may be charged directly with the commission of the offense, although it may not have actually been committed by him. Following Cruit v. State, 41 Texas, 476, and other cases.

### 7.—Same—Principals—Indictment—Case Stated.

It was only because under this particular law defendant's co-defendant was in a class who alone could directly commit such an offense that it was necessary to allege what he did, and then after making the necessary allegations as to what said co-defendant did, it was only necessary to allege that defendant did unlawfully, wilfully, and fraudulently act together with said co-defendant in the commission of the said offense, and no other allegations whatever as to what defendant said or did was necessary.

Appeal from the District Court of Travis. Tried below before the Hon. A. S. Fisher.

Appeal from a conviction of the misapplication of State tax money; penalty, seven years imprisonment in the penitentiary.

The opinion states the case.

*Worth S. Ray* and *McLean, Scott & McLean,* for appellant.—On the question of principals: Shannon v. People, 5 Mich., 71.

On the subject of general laws controlling special laws: Cockrum v. State, 24 Texas, 394; Ragizine v. State, 84 S. W. Rep., 832; State ex rel. Douglass v. Cornell, 39 L. R. A., 513.

On question of repeal by implication: Bryan v. Sundberg, 5 Texas, 418; Cain v. State, 20 id., 355; Fleeks v. State, 83 S. W. Rep., 381; Harold v. State, 16 Texas Crim. App., 157; Robinson v. State, 159 S. W. Rep., 720.

*C. C. McDonald,* Assistant Attorney General, and *C. A. Sweeton,* Assistant Attorney General, for the State.—On question of repeal by implication: Cole v. State, 170 S. W. Rep., 1036; Hanrick v. Hanrick, 54 Texas, 101; Brown v. Chacellor, 61 id., 437; Herndon v. Reed, 82 id., 647; Wilmot v. Mudge, 103 U. S., 217; Frost v. Wenie, 157 id., 46.

On question of sufficiency of indictment: Ferrell v. State, 152 S. W. Rep., 901.

PRENDERGAST, PRESIDING JUDGE.—Appellant was convicted as a principal for the misapplication of State tax money, one Druesdow as tax collector of Harris County alleged to have actually committed the offense. His punishment was assessed at seven years in the penitentiary.

The sole question in the case is one of pleading. We will, therefore, State the indictment and the grounds on which it is attacked.

The indictment: There were several counts    All of them except the third were eliminated. Outside of the necessary preliminary and concluding allegations which are usual, the third count alleges:

That Karl L. Druesdow, in Harris County, Texas, on or about May 1, 1914, and before this indictment was presented, was an officer of the government of said State, towit, was the duly elected, qualified and acting collector of taxes in and for Harris County, in said State, and was then and there by law and in virtue of his said office the receiver and depositary of public money belonging to said State; and as such officer by virtue of said office there had come into his hands and was then and there in his possession a certain sum of public money belonging to said State, towit, the sum of $29,759.34, current money of the United States, of that value, said sum of money being balances then and there in his hands of tax money belonging to said State, collected by him for said State by virtue of his said office during the period of time from May 1, 1913, to April 30, 1914, and which said sum of money he, said Druesdow, did then and there unlawfully, wilfully and fraudulently fail to pay into the Treasury of said State at the time prescribed, the time prescribed by law being on or before the first day of May, 1914.

And that, on or about May 1, 1914, C. C. Quillin did then and there unlawfully, wilfully and fraudulently act together with the said Druesdow in the commission of said offense.

The indictment was based on articles 96, 97 and 74 of our Penal Code, in connection with the duties of collectors prescribed by our Revised Civil Statutes. We will now state these articles of the Code and the substance of the Revised Civil Statutes applicable herein.

(Art. 96.) If any officer of the government who is by law a receiver of public money, or any clerk or other person employed about the office of such officer, shall fraudulently misapply any part of such public money, he shall be punished by confinement in the penitentiarv for a term of not less than two nor more than ten years.

(Art. 97.) Within the term "misapplication of public money" are included the following acts (subdiv. 6): The wilful failure of any officer to pay into the State Treasury at the time prescribed by law whatever funds he may have on hand.

(Art. 74.) All persons are principals who are guilty of acting together in the commission of an offense.

The substance prescribed by the Revised Statutes and actual practice is to this effect: The tax collector is authorized and required to collect all taxes due the State and county of his county, and he is charged as a liability on his part with all of said taxes. This, perhaps, besides others, includes all ad valorem, poll and occupation taxes. (Art. 7618.) At the end of each month he is required, on forms furnished by the Comptroller, to make an itemized report to the Comptroller, showing each and every item of said taxes collected by him during said month, accompanied by a summarized statement showing full disposition of all State taxes collected. He is also required to then present such report, together with the tax receipt stubs to the county clerk, who shall within two days compare said report with said stubs. If they agree in every particular, the clerk shall certify to the correctness of said report. The tax collector then immediately forwards it to the Comptroller, and is required to pay to the State Treasurer all moneys collected by him for the State during said month, with certain exceptions and his commissions on total amount collected. Then, at the end of the tax year, which is fixed at May 1st of each year, he is required to finally adjust and settle his account for the whole year with the Comptroller, and "shall pay over to the State Treasurer all balances in his hands belonging to the State." In order to enable him to do so, the Commissioners Court is required to convene on or before the third Monday in April for the purpose of examining and approving his final settlement papers. In this settlement the Commissioners Court is required to allow the collector for all delinquent and insolvent tax payers; in which event the court itself must certify that such insolvent or delinquent tax payers have no property out of which to make the tax which is assessed, or that they have moved out of the county, or that no property can be found in the

.county belonging to them out of which to make the taxes. This annual settlement is entirely additional to, and embraces additional matters from the monthly reports and remittances otherwise required, and failure to make which monthly remittances is made a misdemeanor by article 144, P. C.

This prosecution was not had under either articles 107 or 144 of our Code.

Our law expressly makes the Comptroller supervisor of the tax collectors, authorizes and requires him to furnish them various blanks for the transaction of their business and reports. And also expressly authorizes and requires him to notify the collectors to make remittances to the State Treasury of all taxes collected by them from time to time during each tax collecting year, in addition or otherwise than said monthly remittances expressly required by statute of them, and they are required to comply with his instructions and requirements.

Formerly our laws required tax collectors to remit to the State Treasury the State taxes collected by them only quarterly, or perhaps only annually. But as the State necessarily, in order to run the government, had to pay out large sums monthly to its employees, officers, and at times pay special appropriations, etc., it became necessary, in order to prevent the State from being on a deficiency basis from time to time, to require the collectors to remit monthly to the Treasury, taxes collected by them, which was done. ·The legislation of the State from time to time, and the records of our courts, clearly show that the State has had to deal with at least three different classes of collectors: one, careless and indifferent, who merely *failed* to make remittances monthly; another, who *fraudulently* and *wilfully* withheld from the Treasury taxes collected by them and thereby misapplied them; and still another, who *wilfully* and *negligently failed* to account for tax money in their hands and pay it to the State Treasury whenever *expressly required and notified to do so by the Comptroller.*

This first class was distinctly embraced by said article 144, which made it a misdemeanor only· for a collector to *merely fail* at the end of each month, or within three days thereof, to remit to the State Treasurer the amount due by him to the State for taxes collected for the preceding month.

The second class is embraced in said articles 96 and 97, wherein it is made a penitentiary offense, with a term of not less than two nor more than ten years, if such collector *fraudulently and wilfully fails* to pay into the State Treasury at the end of each tax year, and thus *misapplies* whatever of the tax funds he at that time may have on hand.·

The other class is embraced by article 107, which makes it an offense for any tax collector who shall *wilfully and negligently fail* to account for all moneys in his hands belonging to the State, and pay ‘the same over to the State Treasurer *whenever and as often as he may be directed to do so by the Comptroller;* and if he violates that article his punishment is fixed at not less than three nor more than ten years.

This makes it clear that neither article 144 nor 107 are in conflict with or repeal or modify the offense prescribed in articles 96 and 97, but each provides for a separate and distinct offense. If this indictment had been preferred under said article 144, it would have been necessary only for it to have alleged that the tax collector of Harris County had failed within three days after the end of any given month to promptly remit to the State Treasury the amount due by him to the State, alleging that amount, and that indictment could not have embraced the offense prescribed by either articles 96, 97 or 107. If the indictment had been preferred under article 107, it would have been necessary for it to have alleged that the Comptroller on a given date had directed said tax collector to account for and pay over to the State Treasurer the tax money he had collected belonging to the State, alleging the amount, and that such tax collector had wilfully and negligently failed to do so, thus making additional and different allegations from that under article 144, and without such additional allegations no conviction could have been obtained under article 107. Without doubt the indictment in this case by its face shows that it was preferred under said articles 96 and 97, and that every allegation made therein complies and is in strict conformity to said articles, which is an entirely distinct offense, as stated, from those prescribed by either article 107 or 144. We see no necessity of further discussing or illustrating the distinct and different offenses prescribed by said articles. A mere reading and application of them clearly demonstrates that neither is in conflict with the other, and that the Legislature intended that they should not be, and that the Legislature intended also that neither should repeal or affect the other.

Appellant's objection to the indictment wherein he claims the failure of the State to allege the failure of Druesdow "to pay the money over to the State *Treasurer* as prescribed by law," etc., is untenable. And so is his other like objection that the indictment fails to charge that Druesdow failed to pay over to the State *Treasurer* all balances, etc., he basing his objections on the idea that this indictment was preferred under article 144, instead of articles 96 and 97, as stated. The allegation in the indictment that he failed to pay the money into the State *Treasury* clearly follows the statute under which the indictment herein was preferred. Besides, the payment of such taxes to the State *Treasury* would, in law and in fact, be the same thing under these statutes as paying it to the State *Treasurer*, and vice versa.

This brings us to the discussion of appellant's objections to the indictment most earnestly insisted upon in oral argument and by his printed brief herein, which in substance and effect is that, as the offense denounced applied to a tax collector only and that the offense could be committed by no one except a tax collector, no other outside party could be a principal with him in the commission of the offense; in other words, that as appellant was not alleged to be a clerk or other person

employed about the office of Druesdow, he could not, therefore, legally be a principal in the offense alleged.

We have thoroughly considered this question and extensively investigated the authorities applicable thereto, and we are clearly of the opinion, both upon authority and reason, that appellant's contention is not sound. The indictment speaks for itself, and is in plain and unequivocal language. Briefly summarized, it alleges that Druesdow was tax collector of Harris County, and as such collected $29,759.34 of State taxes belonging to the State and had that sum on hand as balances on May 1, 1914, and that he unlawfully, wilfully and fraudulently failed to pay it into the Treasury at the time the law required him to do so, which was May 1, 1914. And that appellant unlawfully, wilfully and fraudulently acted together with said Druesdow in the commission of said offense. Now, let us apply the law to the allegations, or the allegations to the law. The law, summarized, is that if Druesdow, tax collector of Harris County, fraudulently and wilfully failed to pay said money into the State Treasury at the said time prescribed, he would be guilty of misapplying it, and that if appellant acted together with him in doing this, he, appellant, would be a principal with him in the commission of that specific offense. Our statute, as to who are principals, is applicable to each and every offense denounced by law, exactly the same as if it was incorporated in each article prescribing a specific offense (with possibly some exceptions not necessary to mention). Of course, it would be wholly inapplicable where one person only should be concerned in the commission of a specific offense. On the other hand, it is specifically applicable to every offense where another than the actual doer acts together with the doer in committing the offense. Our statute on principals was intended to, and actually does, embrace everyone who acts together with another who actually commits an offense. Otherwise, the more guilty of the two might escape all punishment for the most heinous crime. To illustrate this case: Under the allegations in this indictment it might be shown that Druesdow was an honest and faithful officer, scrupulously discharging all the duties thereof; that Quillin came in contact with him and showed him how easy and safe it would be for him to rob the State of the tax money which he had collected, and actually induce him to do so. As compensation for this cunningly devised and iniquitous plan of robbing the State, he, Druesdow, might turn over, or pay, to him, Quillin, a part of this very money. The intent, even if first entertained by Druesdow, to withhold and misapply the money would not alone constitute the offense. It must be combined with the act of fraudulently and wilfully doing so. And Druesdow could appear in Austin, or elsewhere, with the money in his pocket to turn into the Treasury, as an honest man should do, and at the last moment just before he actually pays it into the Treasury, Quillin should approach him and induce him to then and there commit the act, and then and there pay to him, Quillin, a part of the fund which he induced Drues-

dow to then and there withhold from the Treasury, and thus complete the crime. Under such circumstances it would be an outrage on justice and law that Quillin, the more guilty party, should escape, and that Druesdow alone should be punished for the crime which Quillin induces and acts together with him in committing, and is, in fact, responsible for Druesdow committing. Other illustrations might be given, but we think it unnecessary. We have not distinguished between accessories and accomplices and principals under our law. This is wholly unnecessary, as the sole question we are passing upon is as to the sufficiency of the indictment.

The authorities clearly establish the principle that one can be a principal of another when physically, or actually, incapable of committing the offense himself; for instance, in rape, in order to commit that offense, whether by force, or on a girl under fifteen, it is absolutely essential that a male shall with his sexual organ penetrate the sexual organ of the female. It would, of course, be impossible for a woman to do this, but she can be and is a principal when she acts together with the male who actually does this. This is well settled by the authorities. We cite only some of them: Campbell v. State, 63 Texas Crim. Rep., 595, and authorities therein cited; State v. Burns, 82 Conn., 213, wherein it is said: "That a person may be guilty as a principal . . . of a crime which he is personally incapable of committing alone, is too well settled to require extended citation of authority"; State v. Jones, 83 N. C., 605; State v. Comstock, 46 Iowa, 265; Strang v. People, 24 Mich., 1. And while it is held that a man can not be guilty of rape by himself forcibly having sexual intercourse with his own wife, yet he can be and is a principal if he assists another to thus have intercourse with her. (People v. Chapman, 62 Mich., 280; State v. Dowell, 106 N. C., 722; and see Law v. Com., 75 Va., 885.) So an unmarried man who himself could not be guilty of bigamy by marrying a single woman, yet is a principal when he aids, etc., a married man to thus marry. (Boggus v. State, 34 Ga., 275.) In State v. Rowe, 104 Iowa, 323, it was held that while a county treasurer could only himself embezzle county funds in his hands, yet another who could not himself have committed embezzlement of those funds, could and would be guilty as a principal if he acted with the officer and aided him in committing the offense. So in People v. McKane, 143 N. Y., 455, it was held that a person who is not a member of a board of registry, who alone as such was required to do a certain thing, could not himself commit an offense which only a member of the board could do, yet he could be, and was, a principal of such officer if he induced the other to commit the crime, the court saying: "The fact that he may for some reason be incapable of committing the same offense himself is not material so long as it can be traced to him as the moving cause by instigating others to do what he could not do himself." To the same effect are U. S. v. Snyder, 14 Fed., 554, and U. S. v. Bayer, 4 Dillon, 407,

and other cases and text-books which could be cited, but we think it unnecessary.

In oral argument appellant presented and relied upon a case from Michigan. At the time we took no memorandum of the case, presuming it would be cited somewhere in appellant's brief, but we failed to find it there, or elsewhere in the record. We have been informed, however, that that case was Shannon v. People, 5 Mich., 72. We have carefully read that case, and in our opinion, instead of being an authority in appellant's favor, it is against him. Under the peculiar statute of that State and indictment therein, it was held that the proof offered did not sustain the offense as alleged, and that he was indicted under the wrong statute, having been indicted directly as committing the offense, without any allegation that another who alone could commit the offense, had done so. The very defect in that case was expressly met by the allegations in this. The fact that the laws of Michigan made an accomplice a principal would not make that case authority under our law to hold the indictment invalid.

We are clearly of the opinion that the indictment in this case is unquestionably valid, and the judgment will, therefore, be affirmed.

*Affirmed.*

### ON REHEARING.

#### June 14, 1916.

PRENDERGAST, PRESIDING JUDGE.—In the original opinion we stated that in oral argument appellant relied upon a certain Michigan case, and that at the time we took no memorandum of it, presuming it would be cited in his brief, "but we failed to find it there."

That was the statement of this writer. Neither of my associates are in any way responsible therefor. I was absent and did not hear the oral argument when the case was submitted. In some unaccountable way I overlooked the citation of the case in appellant's brief.

However, as a matter of fact, it was cited therein in a paragraph to itself with other matter.

When I thus overlooked it, I was anxious to be certain to get the right case and study it, for I understood it was insisted upon as an important case in point in this case. I inquired of others who heard the oral argument to know what case it was. None of them could inform me at the time. Later I was informed it was the Michigan case discussed in the original opinion. However, as I was apprehensive that might not be the case, but it might be some other, I made said statement. Otherwise, if I had been sure I had the right case, I would have made no statement at all on the subject, for, under the circumstances, it would have made no difference whether it was cited in the brief or not.

When, as stated, I in some unaccountable way overlooked it in the brief, I thought appellant's attorneys had not cited it therein, as it is not infrequent that attorneys read to the court in oral argument cases

not cited in their briefs. I make this explanation and correction of my mistake in justice to all concerned.

The mistake, however, in no possible way affected appellant or any question in his case. It turned out he got the full benefit and consideration of the case cited by his attorneys.

Appellant contends that the indictment is fatally defective because it did not allege what he said or did which would make him a principal, claiming that it was necessary that this should be done.

This is never necessary. The authorities so holding are many and uniform. We know of no case, and none has been cited, holding, or intimating a holding, to the contrary. Judge White, in his form for an indictment under our statutes of principals, specifically shows that no such allegation is necessary. (White's An. P. C., sec. 85.) Under art. 74, P. C., in sec. 86, he says: "It is not necessary to allege the facts relied upon to show the defendant to be a principal, although the offense may not have been actually committed by him. If he is a principal by reason of the part performed by him in the commission of the offense he may be convicted under an indictment charging him directly with its actual commission"; citing Williams v. State, 42 Texas, 392; Gladden v. State, 2 Texas Crim. App., 508; Davis v. State, 3 Texas Crim. App., 91; Tuller v. State, 8 Texas Crim. App., 501; Mills v. State, 13 Texas Crim. App., 487.

Judge Willson, in his Forms (4th ed.), No. 733, under the articles of our Code (74-8, inc.), on principals, likewise shows that it is wholly unnecessary to allege the facts which make one a principal. His form shows that a party is to be charged directly with the commission of the offense without any allegation of what he did or said to make him a principal. He says: "It is unnecessary to allege the particular facts which constitute each a principal. Under a general indictment charging the defendant, or defendants, directly with the commission of the offense, any acts which make him a principal may be proved"; citing some of the cases cited by Judge White and others.

In some recent cases we have had occasion to quote Mr. Branch also on this subject with approval. We again do so. He says: "The acts which make the defendant a principal need not be alleged in the indictment. A principal offender may be charged directly with the commission of the offense, although it may not have actually been committed by him. Cruit v. State, 41 Texas, 477; Williams v. State, 42 Texas, 392; Bell v. State, 1 Texas Crim. App., 598; Davis v. State, 3 Texas Crim. App., 91; Tuller v. State, 8 Texas Crim. App., 501; Mills v. State, 13 Texas Crim. App., 487; Farris v. State, 26 Texas Crim. App., 105, 9 S. W. Rep., 487; Watson v. State, 28 Texas Crim. App., 34, 12 S. W. Rep., 404; Finney v. State, 29 Texas Crim. App., 184, 15 S. W. Rep., 175; Gallagher v. State, 34 Texas Crim. Rep., 306, 30 S. W. Rep., 557; Campbell v. State, 63 Texas Crim. Rep., 595, 141 S. W. Rep., 232; Oliver v. State, 144 S. W. Rep., 604; Madrid et al. v. State, 71 Texas Crim. Rep., 420, 161 S. W. Rep., 93; Dillard v. State,

77 Texas Crim. Rep., 1, 177 S. W. Rep., 99." (1 Branch's An. P. C., sec. 676.) Arensman v. State, 79 Texas Crim. Rep., 546, 187 S. W. Rep., 471, and other cases recently decided but not yet reported. Exactly to the same effect is 1 Vernon's Cr. Stat., sec. 23, p. 42.

Each of the cases cited by Judges White and Willson and Mr. Branch are directly in point. We will quote from but two of them.

Before this court was created, and when the Supreme Court had criminal jurisdiction, Cruit and King were jointly indicted for stealing two bales of cotton with the intent to appropriate them to their use and benefit. Cruit alone was tried. The court instructed the jury, if King stole the cotton with the intent to appropriate it to his and Cruit's use, and Cruit was present when the cotton was stolen, and, knowing the unlawful intent of King, did aid by acts in taking, etc., the cotton, to convict him. The jury did convict him.

The court said: "It is admitted that all who are present at the commission of a crime and give aid are principals. But it is insisted, in an ingenious argument, that the indictment does not warrant a verdict against appellant on the proof of the facts indicated in the charge to which we have referred. If the indictment had charged King with stealing the cotton, and that appellant, knowing the unlawful intent, was present, aiding and assisting him therein, it is conceded the charge of the court would have been strictly correct. But it is said appellant is charged with stealing the cotton, and not with aiding King to steal it, and, to convict him under this charge, the proof must show that he took the cotton with intent of converting it to his own use. With, however, much force we may concede the objection has been urged, we regard it as more specious than sound. The indictment does not, as it seems to be supposed, charge the taking to have been with the intent to appropriate the cotton to the use of King alone, but to the joint use of appellant and King. And if the objection should be sustained, it would result that, in all cases where there are two or more principal offenders, it would be necessary to set forth in the indictment the particular acts done by each of the parties connected with the transaction. This certainly has never been the practice in prosecutions of this character, and has always been held to be unnecessary." (Cruit v. State, 41 Texas, 477.)

In Mills v. State, 13 Texas Crim. App., 487, Mills was indicted separately for shooting Berry. Dart was in no way mentioned in the indictment. This court said:

"Upon the trial the defendant excepted to all evidence tending to prove that Dart shot Berry, upon the ground that there was no allegation in the indictment to that effect. The court overruled the objection and the defendant excepted. We are of the opinion that the ruling of the court was correct. The State proved that Dart did the shooting, and that defendant was present, and knowing the unlawful intent of Dart, abetted and encouraged him in the commission of the offense.

"The question here raised is this: Must the indictment charge all

of the parties engaged in the commission of the offense, in order to the admission of evidence to prove that a party not on trial committed the act, and that the defendant (the party on trial) was present, and knowing the unlawful intent of such person, aided him by acts or encouraged him by words or gestures? We are of the opinion that this question must be answered in the negative. If the party is present and knows of the unlawful intent, aids by acts or encourages by words or gestures the party who actually commits the unlawful act, he is held a principal actor, and can be prosecuted and convicted as such. In this case defendant told Dart to shoot; that he would stand by him. Dart shot. Dart's act was the act of defendant to the same extent and to all purposes in law as if defendant had actually shot Berry himself; and it is proper for the indictment to charge him with the actual shooting of Berry, omitting any or all others engaged in the commission of the act."

If the offense in this instance had been murder, arson, rape, or any other felony, it would have been wholly unnecessary to have made any allegation at all about Druesdow. Quillin could have been charged directly with having committed the offense, although Druesdow himself committed it, and Quillin was merely a principal by reason of what he did or said. It was only because under this particular law Druesdow was in a class who alone could directly commit such a crime, that it was necessary to allege what he did at all. Then after making the necessary allegations which the indictment did as to Druesdow, it was only necessary as to Quillin to allege as it did, that he did unlawfully, wilfully and fraudulently act together with Druesdow in the commission of the said offense—this is the very language of the statute. No other allegation whatever as to what Quillin said or did was necessary.

All other questions were discussed and correctly decided in the original opinion. No further discussion of any of them is necessary.

The motion is overruled.

*Overruled.*