ROGERS, X
 

 Jules Nahoum was charged jointly with Leon Brugger and F. R. Bedrich with embezzling $60,000 from the West Coast Trading Company, S. A., a Mexican corporation, of which Nahoum was the president and general manager. The information contained two counts, the first charging the embezzlement of $60,000 in money, and the second charging the embezzlement of three checks of $20,000 each. Brugger and Bedrich were not tried on the information, but Nahoum was. After a trial lasting eight days, the proceedings of which are embodied in a transcript consisting of two large volumes, containing 531 pages, Nahoum was convicted on both counts, and sentenced on the second count to imprisonment in the penitentiary for a term of not less than six nor more than nine years. This appeal is prosecuted by Nahoum from his conviction and sentence.
 

 The record contains an application for a bill of particulars, a motion to quash, an exception to the jurisdiction of the court, motions for a new trial and in arrest of judgment, and twelve bills of exception.
 

 Bills Nos. 1 and 2 relate to the same subject-matter, and we will dispose of them together. Bill No. 1 was reserved to the partial overruling of appellant’s application for a bill of particulars and bill No. 2 was reserved to the overruling of appellant’s motion to quash the bill of information.
 

 Appellant is charged and prosecuted under the provisions of Act No. 165 of 1918. The application for a bill of particulars and the motion to quash are predicated on the failure of the state to set out in the bill of information that Leon Brugger and F. R. Bedrich, appellant’s eodefendants, were agents, employees, or servants, or that they acted for or on behalf of, the West Coast Trading Company, S. A., or bore any of the relations to said company referred to in the statute.
 

 Act No. 165 of 1918, so far as it is pertinent to the discussion reads as follows, viz.:
 

 “Any servant, clerk, broker, agent, consignee, trustee, attorney, mandatory, depositary, common carrier, bailee, curator, testamentary executor, administrator, tutor, or any person holding any office or trust under
 
 *92
 
 the executive or judicial authority of this state, or in the service of any public or private corporation or company, who shall wrongfully use, dispose of, conceal or otherwise embezzle any money, bill, note, check, order, draft, bond, receipt, bill of lading, or any other property which he shall have received for another, or for -his employer, principal or bailor, or by virtue of his office, trust or employment, or which shall have been entrusted to his care, keeping or possession by another, or by his employer, principal or bailor, or by any court, corporation or company, upon conviction thereof, or of having aided or abetted in the commission thereof, or of having been accessory thereto, before or after the fact, shall suffer imprisonment,” etc.
 

 The bill of information, after setting forth the fiduciary relationship existing between the appellant Nahoum and his principal, West Coast Trading Company, S. A., alleges:
 

 “* * * And as such, an agent and employee of the said corporation, and he, the said Leon Brugger, and he, the said F. R: Bedrieh, and he, the said Jules Nahoum, each then and there, aiding, abetting and assisting each other, did by virtue of the agency existing between he (sic) the said Jules Nahoum and the said West Coast Trading Company, S. A., and while he, the said Jules Nahoum, was acting in his capacity as aforesaid, each did receive and take into his possession and have entrusted to his care and keeping, for and in the name of, and for the account of the said West Coast Trading Company, S. A., a corporation, as aforesaid” ($60,-000 in money in the first count and $60',000 in checks in the second count) “which said” (money or checks as set forth in the different counts) “so to them entrusted, the said Jules Nahoum, the said Leon Brugger and the said F. R. Bedrieh, each, did then and there feloniously and wrongfully use, dispose of, conceal and otherwise embezzle,” etc.
 

 In support of his bill, appellant relies on the well-settled rule that criminal statutes cannot be extended to eases not included within the clear and obvious import of their language. And his contention is that Leon Brugger and F. R. Bedrieh cannot be charged with embezzlement, since they were not employed by the West Coast Trading Company, S. A., nor bore any of the relations to that company as set forth in the statute.
 

 The bill of information clearly alleges that Nahoum, Brugger, and Bedrieh aided and abetted each other in the embezzlement of the money or checks of Nahoum’s principal, the West Coast Trading Company, S. A.
 

 The information appears to be drawn in the language of the statute.
 

 Act No. 165 of 1918 denounces as a crime the act of a fiduciary in aiding and -abetting others in the embezzlement of his principal’s property. The statute ■'does not declare that those who aid the fiduciary in the alleged embezzlement cannot be charged either under the terms of the statute, or under some other law, in the same information with the fiduciary, unless the aiders and abettors bear the relations to the principal referred to in the legislative act.
 

 The Revised Statutes, § 972, provides:
 

 “Whoever shall be convicted as accessory before the fact to any crime or offense, shall suffer the same kind and extent of punishment, according to the circumstances of the. case, as might lawfully be inflicted upon the principal offender for such crime or offense.”
 

 And the Code of Criminal Procedure, art. 238, declares:
 

 “Except in those cases in which the aiding and abetting in or the procuring of the commission of a- designated crime is made a dis
 
 *94
 
 tinct offense, it shall be unnecessary in any indictment to allege that defendant did aid and assist in or procure the commission of the crime charged, but the aider and abettor and the accessory before the fact may each be indicted as a principal, that is to say, charged directly with the commission of the crime.”
 

 We find in 20 C. J. p. 457, the following statement of the rule governing the crime of embezzlement, viz.: j
 

 “Embezzlement is not inherently a joint but a joint and several offense; * it may be committed by one person or by a number of persons.”
 

 “One who aids or abets another in the fraudulent conversion of money or other-property is guilty of embezzlement, if not as principal, then as an accessory before or after the fact.”
 

 Also at page 427 of the same authority appears this language, viz.:
 

 “The means by which the fraudulent conversion is accomplished are immaterial. It may be effected by any exercise of the right of ownership inconsistent with the owner’s rights, and with the nature and purposes of the trust. To constitute a conversion of money or property so as to make out a ease of embezzlement, accused need not appropriate the property to his own use, but is guilty if he fraudulently appropriates it to the use of another.”
 

 Any person who is capable of committing a crime may be guilty as a principal in the second degree or accessory before the fact; and it can make no difference that, by reason of age, sex, condition, or class, he or she is incompetent to commit the particular crime as principal in the first degree. Cyclopedia of Criminal Law, vol. 1, § 224, p. 411:
 

 There are many offenses which can only be committed by particular classes of the community: Bigamy by married persons; rape, seduction, and bastardy by males; larceny after trust by bailees; embezzlement by officers. But because one cannot be a principal it by no means follows that he cannot be punished as an aider and abettor. R. C. L. vol. 1, § 7, p. 135.
 

 Upon the enactment of a statute defining a new felony, it becomes incorporated in the body of the criminal law, and draws to itself all the general rules applicable to indictment, evidence, and procedure incident to other crimes of the same grade. And without being mentioned in the statute, the rules governing accessories immediately attach. Rev. Sta-t. § 972; Code Cr. Proc. art. 238.
 

 Thus a woman may be punished for aiding one attempting rape; a husband, although he cannot individually commit rape upon his wife, may be liable as principal for aiding and abetting another in the commission of the crime. R. C. L. vol. 1, § 7, p. 135. And a person not connected with a corporation as an officer or otherwise may be an accessory to the embezzlement of its funds by one of its officers. R. C. L. vol. 1, § 23. p. 145.
 

 While an officer or employee of a corporation can only himself embezzle the corporation’s funds in his hands, yet another person, who cannot himself embezzle the funds, can and will be guilty as a principal if he acts with the officer or employee and aids or abets him in committing the offense. See Quillin v. State, 79 Tex. Cr. R. 497, 187 S. W. 199, 5 A. L. R. 773; State v. Rowe, 104 Iowa, 323, 73 N. W. 833; People v. McKane, 143 N. Y. 455, 38 N. E. 950; U. S. v. Snyder (C. C.) 14 F. 554, 4 McCrary, 618; U. S. v. Bayer, 4 Dill, 407, Fed. Cas. No. 14547.
 

 It cannot be successfully argued, therefore, that a person cannot be charged as an aeces
 
 *96
 
 sory before tbe fact to tbe crime of embezzlement.
 

 And it was not necessary to denominate Brugger.and Bedrieh as accessories, it being charged as a fact that they aided and abetted Nahoum, the president and general manager of the West Coast Trading Company, S. A., in feloniously and wrongfully using, disposing of, concealing, and otherwise embezzling the money and checks of the trad-i ing company. The charge as laid is sufficient and the principal and accessories can be joined in the same count. Bish. New Cr. Proc. §§ 467, 468; Bish. Dir. & Forms (2d Ed.) § 113; Rev. Stat. § 972; Code Cr. Proc. art. 238.
 

 Bill No. 3. This bill was reserved to the overruling of appellant’s objection to the opening statement to the jury by the special counsel assisting the state in compliance with Code Cr. Proc. art. 333. Although appellant makes the entire statement a part of his bill, he failed to note in his bill any specific objection to the statement. He merely entered a general objection. The statement itself, as it appears in the record, appears to conform to the requirements of the codal article. It merely contains an explanation of the nature of the charges and the evidence by which the state expected to prove them.
 

 The scope and extent of the district attorney’s opening statement is within the control of the trial judge in the exercise of a wise discretion, and a conviction will not be set aside for error therein unless the rights of a defendant were plainly violated. State v. Ricks, 170 La. 507, 128 So. 293; State v. McKee, 170 La. 630, 128 So. 658. Appellant neither alleges nor shows in his bill any injury or prejudice to himself by the statement of which he complains.' His bill is therefore untenable.
 

 Bill No. 4. This bill was reserved to the overruling of appellant’s plea to the jurisdiction of the court below. The plea was filed on the second day of the trial and disposed of on the seventh day of the trial. It alleges that the criminal district court for the parish of Orleans was without jurisdiction ratione materiae, because if any offense was committed herein, which is denied, the said offense was committed in the city of Cajeme, Mexico, and not within the jurisdiction of the court.
 

 The statement per curiam attached to the bill is in the following words, viz.:
 

 “The evidence convinced me beyond any reasonable doubt that the defendant had committed'the crime of embezzlement, and that the fraudulent conversion had been done by him in the Parish of Orleans, and, therefore, within the jurisdiction of this court.”
 

 The record discloses that in the fall of the year 1929, a large amount of rice was delivered by the farmers of the Yaqui Valley, in Mexico, to the West Coast Trading Company, S. A., of which Jules Nahoum was president and general manager. This rice was sold under a contract with Nahoum by J. H. Ricau, a broker of the city of New Orleans. Thereafter, F. R. Bedrieh appeared in New Orleans and, with the approval of Nahoum, took over the contract from Ricau. The rice was shipped to the Douglas Public Service Corporation, Inc., a concern engaged in the warehouse business in the
 
 city
 
 of New Orleans. The shipment was made with the bill of lading attached to a sight draft drawn on Ricau, so that the rice was only removable from the warehouse upon the payment of the draft. This apparently was done, and later $60,000 of the' proceeds of the sale of the rice, on an order signed by Nahoum and dated at Cajeme, Mexico, were delivered, in the form of three checks of $20,000 each, by the Douglas Pub:
 
 *98
 
 lie Service Corporation, Inc., to the American Bank & Trust Company, of New Orleans, for the account of Leon Brugger.
 

 It is the state’s contention that the $60,000 in question was never received by the West Coast Trading Company, S. A., but was converted by Nahoum to his own use or to the use of his alleged aiders and abettors, Brugger and Bedrich. The appellant, on the other hand, contends that he used the money in the way in which he was authorized to do by a resolution of the board of directors of the West Coast Trading Company, S. A.
 

 The jury, evidently, accepted the state’s contention as correct, because they found Nahoum guilty of embezzling the funds of the West Coast Trading Company, S. A.; and this court, under the constitutional inhibition, is powerless to review the verdict.
 

 Appellant argues with considerable force that the venue of the embezzlement, if any was commi,tted, must be laid at Cajeme, Mexico, where the purpose' was formed to wrongfully convert the funds of the West Coast Trading Company, S. A. In support of the argument .appellant. cites State v. Sullivan, 49 La. Ann. 197, 21 So. 688, 62 Am. St. Rep. 644, and four cases from other jurisdictions. All that these cases hold is that the embezzler may be prosecuted at the place where his intention to commit the crime was formed. But they do not hold that the place of intention is the sole place where the venue of the embezzlement may be laid.
 

 The general rule is set forth in 16 C. J. p. 189 as follows, viz.:
 

 “Defendant cannot be prosecuted for embezzlement in a county where the crime was not actually, or in contemplation of law, perpetrated. Therefore, where the entire transaction constituting the embezzlement occurred in one .county only, the venue must as a matter- of course be laid in that county. The crime of- embezzlement is committed in the county in which the money or property is converted, although it may have been received in another county, and it may, and as a rule should, be there indicted and tried. But it is held that an indictment will lie in the county where accused, being in possession of the property or the money formed the intent to convert it, although he may have received it and actually disposed of or appropriated it in another county.”
 

 The record shows that Nahoum, Brugger, and Bedrich were in conference at Cajeme, Mexico, in the year 1929, and that these parties were also present in the city of New Orleans in January, 1930, when Brugger received the $60,000 from the Douglas Public Service Corporation, Inc, Nahoum identified Brugger so that he could obtain the money from the American Bank & Trust Company.
 

 If Nahoum was guilty of embezzlement, and the jury so found, and he formed the intent to commit the crime while at Cajeme, the intent was a continuing one and he had-the same intent when he arrived in New Orleans, where the conversion of the funds of the West Coast.Trading Company, S. A., actually occurred.
 

 We see no error in the ruling complained of in’this bill.
 

 Bill No. 5. This bill was reserved to the refusal of special charges Nos. 1, 2, 3, 4, 5, 6, 7, and 8 requested by appellant.
 

 The trial judge, in his statement per curiam, says:
 

 “My general charge to the jury covered amply every phase of the ease, which included the matters presented in the foregoing special charges requested by defendant.”
 

 Appellant admits this to be the case with respect to special charges Nos. 1, 5, and 6.
 
 *100
 
 which'he abandons, but he does not admit its correctness with respect to special charges Nos. 2, 3, 4, and 8, which read as follows, viz.: ■
 

 “Special Charge No. 2. I charge you that in order to' convict the defendant, the State must prove that a demand has been made on defendant to return the money he is alleged to have embezzled, or that the money has been actually and intentionally feloniously converted to his own use.
 

 “Special Charge No. 3. The failure of the defendant to pay over the money, if unexplained, does not itself raise a presumption of felonious appropriation sufficient to convict.
 

 “Special Charge No. 4. The mere failure to account for money received from an employer in a fiduciary capacity, in the absence of a demand for an accounting, will not sustain a conviction unless’ it be actually proven by the State that the defendant has misappropriated the money and converted same to his own use.”
 

 “Special Charge No. 8. As a matter of law, if you believe from an examination of the evidence in certain of its aspects that the defendant is guilty, and if you further believe from an examination of other aspects of the evidence that the defendant is not guilty, then you should adopt that view of the evidence which would lead to the acquittal of the defendant, rather-than that view which leads to .his conviction.”
 

 Appellant in his brief discusses special charges 2, 3, and 4 together. He contends that the charges, both in form and substance, were approved in State v. Stringer, 162 La. 925, 111 So. 330.
 

 He also relies on State v. Pellerin, 118 La. 547, 43 So. 159, 163.
 

 If the facts in the'present case were the' same as the facts in the Stringer and Pellerin Oases, appellant’s contention would be eorrect. But this is not so.
 

 The facts in the Stringer Case show that Stringer, who was' employed to sell ice, collected $25 for his employer, and then left his place of employment (Jonesville) for Monroe. A few days thereafter he was charged with embezzlement. Stringer returned to Jones-ville in about fifteen days, when he was arrested. He contended that .he always had his employer’s money in his possession, and, as a matter of fact, had it at the time he was arrested. That he had tried to find his employer on the night he left Jonesville to pay him the money, but was unable to do so. There was no evidence of any wrongful conversion on Stringer’s part. ■
 

 In the Pellerin Case, the trial judge gave a requested charge in the same words as special charge No. 3 requested in this case, but he added thereto the following: “But if the evidence warrants it you can convict without proof of demand.” Defendant excepted to the judge’s addition to the requested charge. The. special charge as supplemented by the trial judge was held to be good, the testimony in the case showing a wrongful conversion. The court, in the course of its opinion, said:
 

 “Where there is proof of wrongful misappropriation by the servant, and wrongful appropriation to his own use and benefit, there is no necessity for a demand.” (Citing au-' thorities.)
 

 The trial judge instructed the jury in his. general charge as follows, viz.: “When there is proof beyond any reasonable doubt of felo-' nious appropriation to a person’s own use and benefit, proof of demand is unnecessary.”
 

 There does not appear to be any serious dispute between the state and the appel
 
 *102
 
 lant as to the conversion of the funds of the West Coast Trading Company, S. A. The controversy arises on the state’s contention that’ the conversion was fraudulent and the appellant’s contention that the conversion was not fraudulent. The controversial question was one of fact to be determined by the jury. It cannot be determined by this court.
 

 Moreover, there is some evidence in the record as to a demand being made on appellant, and certainly a judicial demand was made in the suit filed against him at Phoenix, Ariz., contemporaneously with his arrest on the charges herein and before he was extradited for trial thereon.
 

 The subject-matter of special charge No. 8 was covered by the following instructions of the trial judge in his general charge, viz.:
 

 “The prisoner at the bar is presumed to be innocent until he is proven guilty. The consequence of this rule of law is that he is not required to prove his innocence, but may rest upon the presumption in his favor until it is overthrown by positive affirmative proof. The burden of proof, therefore, is upon the state to establish to your satisfaction beyond any reasonable doubt the guilt of the prisoner, as to the crime charged in this information. In order to justify a conviction the state must establish beyond any reasonable doubt every ingredient constituting the offense charged.
 

 “The presumption of innocence is a substantial part of the law, and it is your duty to give the defendant the full benefit of this presumption, and to acquit him unless you find that his guilt has been established beyond any reasonable doubt.
 

 “If the evidence demonstrates merely a probability of guilt, and not guilt beyond a reasonable doubt, you must acquit the prisoner. This doubt, however, must be a reasonable one, that is, one founded upon a real tangible, substantial basis, and not upon a mere caprice, fancy or conjecture. It must be^such a doubt as would give rise to grave uncertainty; one that would make you feel that you had not an abiding conviction to a moral certainty as to the prisoner’s guilt by that degree of assurance which induces a man of sound mind to act without doubt upon the conclusions to which the evidence and thé law in the ease lead.”
 

 A special charge is properly refused, even if correct, when the subject-matter Is properly covered by the general charge. State v. Erwin, 133 La. 550, 63 So. 167, and authorities therein cited.
 

 We do not find the bill to be well-founded.
 

 Bill No. 6.' This bill was reserved to two paragraphs of the general charge reading as follows, viz.: -
 

 “If a person who holds a position of trusty such as that of president, general manager,, servant or employee in respect to a corpora? tion engages the services of one or more persons to aid and abet him in embezzling the funds of such corporation, he becomes responsible for and bound by everything that is said or done by his aiders and abettors in furtherance of the commission of the said crime, to the same extent as if those things had been said or done by the employee him? self, even though his aiders and abettors dp not stand in a position of trust with respect to the corporation.”
 

 “If as a result of a plan devised by the said employee, either entirely by himself or in concert with such aiders and abettors for the pur.pose of committing the said crime of embezzlement, said aiders and abettors assist the said employee in committing the said berime by receiving funds belonging to the said cor
 
 *104
 
 poration with the knowledge, consent and acquiescence of the said employee, in the eye of .the law, such conduct on the part of said aiders and abettors would be equivalent to the reception of the said property by the employee himself, although the employee himself had not actually received the said funds into his physical possession, and although the said aiders and abettors do not stand in a position of trust in respect to the corporation.”
 

 Appellant argues that the instructions complained of are not warranted by the provisions of Act No. 165 of 1918, and that Brugger and Bedrich, not being officers or employees of the West Coast Trading Company, S. A., were not guilty of any offense under the statute. That Brugger and Bedrich were named in the information merely for the purpose of admitting evidence which was otherwise inadmissible.
 

 The bill of information charges, in effect, a conspiracy among Nahoum, Brugg-er, and Bed-rich to embezzle $60,000 from the West Coast Trading Company, S. A. It was the theory of the state, which theory it offered its evidence to' support, that Nahoum, the president and general manager of the trading company, Brugger, and Bedrich entered into and executed a plan whereby Brugger and Bedrich ¡received and fraudulently converted the funds of the trading company, in which reception and fraudulent conversion of money Nahoum participated.
 

 Under a charge of embezzlement it is not necessary to .allege and prove that each aider and abettor performed the same acts. It is sufficient to allege and show the part each aoeused played in the commission of the crime.,
 

 .. As-shown in our discussion of bill No. 2 embezzlement is not a joint but a joint and several offense; it may be committed by one person or by a principal and another person.
 

 One who aids or abets another in the fraudulent conversion of money or other property is guilty of embezzlement, if not as principal, then as an accessory before or after the fact.
 

 To constitute a-conversion of money or property so as to make out a case of embezzlement, one need not appropriate the property to his own use, but is guilty if he fraudulently appropriates it to the use of the other.
 

 Nahoum bore a fiduciary relationship to the corporation of which he was president and general manager. It was proper to charge Brugger and Bedrich under Act No. 165 of 1918 as aiders and abettors of Nahoum, and it was proper to charge all three as principals under Rev. Stat. § 972, quoted supra, our general statute punishing accessories as principals. And Code Cr. Broe. art. 238, quoted supra, expressly authorizes the charging of an accessory as a principal in the commission of a criminal offense.
 

 To charge several persons with a crime, one as principal and the others as aiders and abettors, is equivalent to charging a conspiracy. State v. Griffin, 48 La. Ann. 1409, 20 So. 905. There the court held:
 

 “The proper foundation having been laid, and the conspiracy sufficiently established, the act done by one in furtherance of the unlawful design is, in law, the act of all, and the declaration of one of the accused at the time of doing such act is evidence against the others.”
 

 This bill is untenable.
 

 Bill No. 7. This bill was reserved to the overruling of appellant’s objection to the delivery to the jury of the following special charge requested by the state, viz.: ¡
 

 
 *106
 
 “The act of embezzlement is complete whether the property is actually converted to the use of the .person charged or to the use of any one else.”
 

 The charge was requested after the general charge had been read to the jury. Appellant complains that the charge was not timely requested* and that it is misleading and not a true statement of the law.
 

 Appellant argues that under rule XXI, § 2, of the criminal district court, and article 390 of the Code of Criminal Procedure, the special charge should have been requested before argument had begun and not after it had been completed. The court rule and the codal article are in the following words, viz.:
 

 “The prosecution and the defense have each the right to present to the court, before the argument has begun, any written charge or charges, and request that the same be given.”
 

 There is nothing in this procedural regulation which forbids either the prosecution or the defense to request one or more special charges at the conclusion of the delivery of the general charge. The regulation is directory and not mandatory. Obviously, its purpose is to encourage the orderly conduct of criminal trials.
 

 The objection that the charge is not a true statement of the law is without merit. We have shown in our discussion of the previous bills that it is wholly in accord with the law.
 

 Bill No. 8. This bill was reserved while one H. A. Sibbet, a witness for the state, was under cross-examination. Counsel for appellant attempted to identify a certain contract alleged to have been entered into between Nahoum, as president of the West Coast Trading Company, S. A., and one Robert E. Pollock, for the buying and selling of cotton, whereas rice was the commodity from the selling of which the money and checks alleged to have been embezzled herein were realized. The witness testified that he did not know Pollock’s signature. Counsel for appellant then directed his examination into matters that were of a purely collateral nature. The state objected, and the objection was sustained. Hence this bill. The trial judge’s statement per curiam is as follows, viz.: .
 

 “The contract referred to in this bill was dated May 2, 1929, and not May 22, 1929.
 

 “The contract was not identified by the witness. He denied knowing Mr. Pollock’s signature.
 

 “The defendant, when testifying on his own behalf, could have availed himself of the opportunity to identify this document.
 

 “The defendant afterwards withdrew his offer as to the alleged contract, then continued examining the witness as to Mr. Pollock’s relations with the company. All such questions had been -answered and had gone to the jury when I sustained the state’s objections. At this juncture the defendant had begun to direct his examination into purely collateral matters. He did not offer the contract again.”
 

 The record fully corroborates the statement of the trial judge. The bill is not well found-, ed.
 

 Bill No. 9. In connection with the cross-cxaminatipn of the state’s witness H. A. Sibbet, a letter and an accompanying written refinancing plan were excluded on objection; by the state. This bill was reserved to the-court’s ruling. The statement per curiam of the trial judge is in the following words, viz.:
 

 “The letter referred to in this bill was iden-1 tified by the witness, but the plan alleged by the defendánt to have accompanied the letter as a separate document was not identified.
 

 
 *108
 
 ■ “However, if my ruling was erroneous the error was cured when the defendant as a witness on his ,own behalf explained in detail the contents of both the letter and the plan.”
 

 . The statement- per curiam is borne out by the record. It is.too well settled to require the citation of authority that error in excluding testimony is of no avail when such testimony is afterwards admitted; and that not only error, but injury, must be alleged and shown to justify a reversal because of the exclusion of evidence.
 

 Bill No. 10. This bill was reserved to the overruling of appellant’s motion for a new trial. This motion contains eighteen articles. All the articles, with the exception of articles 8 and 9, attack either the sufficiency of the evidence on which appellant was convicted or assert the correctness of the legal questions raised under the bills of exception.
 

 , The statement per curiam attached to this bill is as follows, viz.:
 

 : “None of the allegations on which the motion for a new trial was based were well founded.
 

 “The evidence adduced at the trial and the law applicable to the case established the guilt of the defendant beyond any reasonable doubt.”
 

 ■ This court; cannot determine the sufficiency of the evidence on which appellant was convicted. And our rulings on the bills of exception reserved ;by appellant dispose of the issues raised, therein.
 

 Articles 8 and 9 of the motion for a hew trial áre leveled at the alleged haste in which the verdict was rendered by the jury. There is no proof in the record as to the length of time taken by the jury in reaching a verdict, and-there-is no law requiring more time to be taken than is necessary. State v. Le Blanc, 116 La. 822, 41 So. 105; State v. Turner, 165 La. 657, 115 So. 814.
 

 Bill No. 11. This bill was reserved to the-overruling of appellant’s motion in arrest of judgment. The. motion reurges the plea to, the jurisdiction, upon the overruling of which bill of exception No. 4 was reserved. The issue raised by the present bill is covered by our discussion and ruling on bill No. 4.
 

 Bill No. 12. This bill was reserved immediately upon sentence being pronounced by the trial judge under the verdict of the jury finding the appellant guilty on both counts. The sentence was imposed on the conviction of appellant on count No. 2. .Appellant excepted to the sentence, and upon his exception being overruled reserved a bill. The trial judge attached to the bill the following statement, viz.:
 

 “The jury found the defendant guilty as charged on both counts; but I sentenced the defendant only on count number two, because this count was supported by both the law and the evidence, whereas, count number one was' not.”
 

 Counsel for appellant argued in support of the bill that the evidence was insufficient to convict appellant on the count of the information under which he was sentenced. But this court cannot review the evidence bearing upon the guilt or innocence of the appellant.
 

 The • bill of information contains two counts; the first charging the embezzlement of $60,000 in money, and the second charging the embezzlement of three checks of $20,000 each, that is to say, of $60,000 in checks. Both charges grow out of the same transaction.
 

 Although the facts set out in the information charge but one offense, namely, em
 
 *110
 
 bezzlement; obviously, tbe embezzlement was charged in two different ways in separate counts to meet the different phases of proof which might be adduced on the trial of the ease. This method of pleading is permissible. Code Cr. Proc. art. 217; State v. Jacques, 45 La. Ann. 1451, 14 So. 213; State v. Clement, 42 La. Ann. 5S3, 7 So. 685; State v. Cook, 20 La. Ann. 145; State v. Johnson, 10 La. Ann. 456.
 

 The verdict was a general one in the strictest technical sense, since it found the defendant guilty on both counts of the information. No legal objection can be found to the verdict.
 

 “Where but one offense is charged in various forms in separate counts of one indictment, a general verdict of guilty, or of guilty as charged, without mentioning the count on which it is based, is sufficient; such a verdict is a verdict on each count, and a proper conviction on one count will not be set aside because of an unwarranted conviction on another count.” 16 C. J., p. 1105.
 

 If. a general verdict of guilty, or of guilty as charged, without mentioning the count on which it is based, is sufficient, certainly a verdict of guilty on both counts answers all legal requirements. Where the same offense is charged in different ways in separate counts of the information and the jury convicts on both counts, as in the case at bar, the conviction is of one crime only, and the court, necessarily, can impose but one sentence. But this sentence can be imposed under the conviction on either count of the information. The appropriate rule is as follows, viz.:
 

 “Where one offense only is charged in separate counts, there is never a necessity for the jury to pass on each count by itself, but they may bring in a general verdict of .guilty or not guilty on the whole. And the sentence on conviction, conforming to the fact, will be for only one offense.” Bishop’s Criminal Procedure, vol. 1, § 1015, par. 3, citing numerous authorities.
 

 We do not find any merit in the bill.
 

 Por the reasons assigned, the conviction and sentence appealed from are affirmed.
 

 O’NIELL, C. J., dissents from the ruling on bill No. 5, as to the special charges No. 2, 3, and 4, and dissents from the ruling on bill No.' 7.
 

 ODOM, J., takes no part.