## J. P. HAMER v. THE STATE.

No. 657.    Decided June 22, 1910.

Rehearing Denied November 23, 1910.

**1.—Embezzlement—Indictment—Description of Money—Value.**

Where, upon trial of embezzlement, the indictment alleged the embezzlement of so many dollars in legal money of the United States of America, this was a sufficient allegation of value, and it was not necessary to expressly allege the value of said money.

**2.—Same—Evidence—Receipt for Money—Debtor and Creditor—Explanation.**

Where, upon trial of embezzlement, the State introduced in evidence a certain receipt which the defendant had given the prosecutrix for money received by him, and which contained the words "on loan account," there was no error in permitting the State to show by oral testimony that this meant that the money was placed in the hands of the defendant to be loaned out by him as the agent of the prosecutrix, and that this did not show the relation of debtor and creditor. Following Stephens v. State, 49 Texas Crim. Rep., 489.

**3.—Same—Definition of Embezzlement—Misdemeanor—Felony.**

Upon trial of embezzlement, where the evidence showed that defendant, as agent of prosecutrix, had received some $2,000 from her to be loaned out for her account, and it was further shown that the defendant had deposited this amount in a bank, and thereupon embezzled the same, it was immaterial how much money he drew out of the bank at a time and appropriated to his own use, where the act of embezzlement of the whole amount was shown by other evidence; and the fact that he drew out less than $50 on the date the indictment alleged that the embezzlement occurred would not reduce the offense to a misdemeanor. Following Taylor v. State, 29 Texas Crim. App., 466.

**4.—Same—Evidence—Copy of Written Instrument—Harmless Error.**

Where, upon trial of embezzlement, the State's testimony showed that the defendant had been entrusted with a large sum of money by the prosecutrix to be loaned out for her account and he had delivered to prosecutrix a bogus note for said amount, leading her to believe that he had loaned the money to a third party for her account when in fact he had misappropriated the same; and it further appeared that at said trial of defendant for embezzlement that said note had been lost, there was no error in permitting the State to introduce a copy thereof which appeared in the affidavit against the defendant, besides defendant had admitted that said note was a forgery, and if there was any error in admitting secondary evidence it was harmless.

**5.—Same—Limitation—Definition of Offense—Act of Fraudulent Appropriation.**

Where, upon trial of embezzlement, the evidence showed that the defendant had procured from the prosecutrix a large sum of money to be loaned out for her account, and that instead of doing so he had embezzled the same, the fact that he had deposited the amount in a bank and had drawn out the same at different times would not fix the date of the embezzlement, and he could not plead limitation because the first amount he had drawn out of said bank would have been barred under the pleadings, as this did not fix the act of misappropriation, but this was fixed by the State on the day when the defendant attempted to manufacture testimony to cover up the fraudulent misapplication of all of said money, and which was not barred under the indictment.

**6.—Same—Sufficiency of the Evidence.**

Where, upon trial of embezzlement, the evidence sustained the conviction, the same will not be disturbed on appeal.

Appeal from the District Court of Travis.    Tried below before the Hon. George Calhoun.

Appeal from a conviction of embezzlement; penalty, four years imprisonment in the penitentiary.

The opinion states the case.

*Henry Faulk* and *Jno. T. Duncan* and *W. S. Banks,* for appellant. —On the question of limitation: Epperson v. State, 22 Texas Crim. App., 694; State v. Missouri Pac. Ry. Co., 117 S. W. Rep., 1173; Leonard v. State, 7 Texas Crim. App., 417.

*John A. Mobley,* Assistant Attorney-General, and *W. B. Holliday,* for the State.—On the question of the sufficiency of the indictment: Warren v. State, 29 Texas, 370; Kelley v. State, 34 Texas Crim. Rep., 412; Gibson v. State, 100 S. W. Rep., 776; 15 Cyc., p. 515.

On the question that each withdrawal of money from the bank did not constitute a separate offense: Taylor v. State, 29 Texas Crim. App., 466; Farmer v. State, 34 S. W. Rep., 620; Clark v. State, 48 Texas Crim. Rep., 527; Lawshe v. State, 57 Texas Crim. Rep., 32, 121 S. W. Rep., 865.

On the question that a receipt for money may be explained by parol evidence: House v. Holland et al., 94 S. W. Rep., 153.

McCORD, Judge.—This is an appeal from a conviction for embezzlement with a penalty of four years confinement in the penitentiary.

1.  Appellant seeks a reversal, first, upon the ground that the bill of indictment is insufficient in that it omits to state the value of the money embezzled; second, that the facts disclosed the relation of debtor and creditor between appellant and the prosecuting witness, and that the court erred in not charging the jury that if the money was loaned to the defendant by the prosecutrix, and the relation of debtor and creditor existed, he could not be guilty of embezzlement, and, third, that the defendant should be acquitted because the proof disclosed that on the date alleged in the bill of indictment,

when the embezzlement occurred, the defendant embezzled less than $50 in value, and, therefore, the court should have directed the jury if they found the property to be of a value less than $50 that defendant would only be guilty of a misdemeanor, or to state it in another way, that if money is placed in the hands of an agent to be handled for his principal and that he used that money at different times, that each appropriation would constitute a separate offense, and for that reason if at any time he appropriated an amount less than $50 that defendant could not be convicted of a felony. The indictment in this case alleged that appellant being the agent, clerk, attorney at law and attorney in fact for Emily Lewis, that there had come into his possession as such agent and attorney the sum of $2,050 "in the legal money of the United States of America," and that defendant did on or about the 13th day of December, 1902, unlawfully and fraudulently embezzle, misapply and convert said money to his own use without the consent of the said Emily Lewis, and which had come into his possession and control by virtue of his said agency, clerkship' and attorneyship.

Now, it is contended that because the pleader omitted to state that the $2,050 in legal money of the United States of America had any value, that, therefore, the bill of indictment is defective. We are of opinion that an indictment alleging embezzlement of so many dollars in legal money of the United States of America is a sufficient allegation of value; that the amount designated expresses the value and is a sufficient allegation of value. See Warren v. State, 29 Texas, 370; Kelley v. State, 34 Texas Crim. Rep., 412; 15 Cyc., 516; Gibson v. State, 100 S. W. Rep., 776. In 15 Cyc., 516, it is stated: "An indictment or information for embezzlement must, as a general rule, state the value of the money or other property alleged to have been embezzled, although this may be done approximately or in the aggregate. Where, however, the punishment prescribed by the statute is fixed irrespective of the value of the property converted, its value need not be alleged, and in some cases a distinction is drawn between legal tender and other property. And it has been held that an allegation of value is indispensable if property or bank bills not a legal tender has been embezzled, but that where the allegation is of the embezzlement of so many dollars in money, the amount designated expresses .the value, the presumption being that it was lawful money." The pleader, however, goes further in this case and alleges that it was legal tender money of the United States of America. We, therefore, hold that the bill of indictment is a valid bill.

2. On the trial of the case Miss Emily Lewis testified that she had known appellant for a number of years, and that she had had him to act as her agent in collecting her rents, paying her taxes for her, and looking after her business generally, and that she had put money in his hands to loan for her. She testified that on

October 15 she sold a piece of property for $2,000, and that this money was turned over to appellant to invest for her, and that on December 5 she let him have $60 to be loaned for her. She further testified that she made no inquiry of the defendant for something nearly a year after she had given him this money to invest as to how he had invested the money; that she had implicit confidence in him, and trusted him, and took his word as to the loaning of her money; that the defendant paid her some interest during the year 1903, ·claiming that this was the interest on the $2,050 that he had loaned to a man named John Ward. The defendant in a statement that he made to Miss Lewis of the moneys and what disposition he had made of her funds reported that he had loaned $2,050 of her money to John Ward, securing a mortgage on a piece of property that was worth more than double the value of the loan. The State placed in evidence the receipt for the $60 above mentioned. Finally, Miss Lewis became restless and placed her matters in the hands of Mr. Doom, an attorney of the Austin bar, who has since died. That inquiries were made with reference to the John Ward $2,050 note. This note was found to be bogus, and no such man as John Ward could be found, and appellant practically admitted that the John Ward note was a forgery. The John Ward note was executed on December 13, 1902, the day the bill of indictment alleged the embezzlement occurred. It is contended by appellant that the receipt that was executed by the defendant for the $60 shows upon its face that it was money loaned Hamer by Miss Lewis. The receipt reads as follows:

"December 5, 1902.
"Received of Miss Emily Lewis Sixty Dollars on loan account.
"J. P. Hamer."

Miss Lewis was ·permitted to testify as to the meaning of the words "loan account" in said receipt, and that it meant that the money was placed in his hands to be loaned out by him as her agent. It is further contended that this shows that the relation of debtor and creditor existed between Miss Lewis and appellant first, and second, that being a written instrument and not ambiguous, that the court below erred in allowing the State to prove what "loan account" meant. We are of opinion that the receipt did not show the relation of debtor and creditor, and it was permissible for the witness to explain what "loan account" meant. A question not dissimilar to .this was before our court in the case of Stephens v. State, 49 Texas Crim. Rep., 489. The receipt in that case reads as follows: "Received ·of ·Chas. Monroe the sum of two hundred and ten dollars subject to his order on demand." And there the State attempted to prove what was the meaning of the words "subject to his order on demand," and this court, speaking through Judge Henderson, says: "With reference to the construction of said instrument we

would observe that if it is a mere receipt and not contractual, it is subject to explanation and contradiction by parol testimony. Or if there is ambiguity about said instrument as to whether the same is a receipt or contractual, it is subject to parol testimony, explaining or contradicting it. See 1 Elliott on Evidence, p. 617." And the court further stated: "However, in the hands of a private person, does the clause which follows a receipt in general terms 'subject to his order on demand' constitute it such an instrument as makes the fund in his hands subject to his use as a loan and so not the subject of embezzlement? Or is it of that character which is subject to explanation by parol evidence? As stated above, we think it is of the last named character." So, in this case, we think, it could be shown by the State that the delivery of said money to appellant was for a specific purpose inconsistent with the loan or authority on the part of appellant to use and appropriate the same to his own use, and on the other hand it was permissible for appellant to show that the purpose of the execution of said receipt was to authorize him to use said money and to return it when demanded. The proof by Miss Lewis was that the money was deposited with appellant for the purpose of loaning it out for her. There is no testimony in the record that would suggest that the money was placed with defendant for a different purpose other than what Miss Lewis stated. We have carefully read over the testimony in the case, and we are of opinion that there is nothing in the record that would suggest that the relation of debtor and creditor existed between Miss Lewis and the defendant.

3. On the trial of the case appellant offered his account with the bank where he kept Miss Lewis', money deposited. The account simply stated "J. P. Hamer, trustee." He offered this account in evidence and it shows that on the 13th day of December, the date alleged in the bill of indictment as to when the appropriation occurred, that he drew out of the bank $17.25 in one check, and $25 in the other. The contention is made that the bill of indictment alleging the offense to have occurred on that date, and the account only showing that he drew out of the bank $42, that this was a separate and distinct offense, and being a misdemeanor, the court should have directed the jury that they would find defendant guilty of petit theft, and that the State was not permitted to show any other date than the 13th, because each withdrawal was a separate and distinct appropriation. We can not give our sanction to this theory. The money having been deposited by defendant in the bank, he had authority to withdraw the money, and the mere act of withdrawal could not of itself be construed into an appropriation. Suppose that defendant deposited $2,000 in the bank on the 15th of October. Suppose on the next day he declares an appropriation in his mind, then because he may have drawn it out by dribbles, could it be said that each withdrawal was a separate offense? Or

suppose that he had the $2,000 in his pocket, and determined to appropriate it, and he walked out of his office and went upon the street, and spent five or ten dollars today, fifteen tomorrow, and twenty-five the next day, ' would each be a single appropriation? We think the position is wholly untenable. The offense of embezzlement is constituted by the fraudulent misapplication or conversion to his own use without the consent of his principal or employer any money or property of such principal or employer which may have come into his possession or be under his care by virtue of his office, agency or employment. See article 938, Penal Code. A question similar to this came before this court in the case of Taylor v. State, 29 Texas Crim. App., 466, and the proposition contended for by appellant here was held adversely to his contention in that case. Judge Davidson, speaking for the court, says: "Appellant urges that the facts raised the issue upon which the court should have charged the misdemeanor phase of the law of embezzlement, and that if embezzlement was proved at all it was not shown that as much as twenty dollars was converted at any one time. To this we must withhold our assent. We do not think the evidence raises this issue. The facts show that the appellant obtained as agent large sums of money of his employer and converted same to his own use." So, in this case the proof discloses that appellant received $2,050. This money came into his hands on the 15th of November, 1902. One month thereafter, or on the 17th day of December, 1902, he forged a note to cover $2,050 and attempted to make Miss Lewis believe that this note was genuine and that he had loaned her money on it. This itself may be evidence of the act of conversion, and this was the day that the offense was alleged to have been committed. But let us look at it differently. Defendant's account at the bank shows that on October 15, the very day that this money was placed in the bank, he drew out $540; on the 16th, $100; on 18th, $136; on 23d, $65; on 29th, $50; on November 6, $61; on 7th, $73. If it may be charged that each withdrawal of the money from the bank was a separate offense, still the fact that the defendant showed on the day alleged in the indictment he did not commit a felony, the State would be permitted to go behind that date and show that he had committed a felony at some time within the period of limitation, and the State was not limited to the day alleged in the indictment. But it is contended by appellant if the offense committed on the day alleged in the bill of indictment was a separate and distinct offense, and the State, having so proved this matter, was precluded from inquiring into other offenses, and he gives as an illustration that if a party steals several horses from different persons at different times, that you could not offer the proof of the theft of a horse from B when you had alleged the theft of a horse from A on the date fixed in the indictment. We do not think counsel is happy in his illustration. Each is a separate and distinct offense. Here it is

not the withdrawal of the money in dribbles that makes the offense. It is the appropriation of the money, and whenever the defendant appropriated it his offense was complete, and the State's case can not be successfully met by proof that after he had appropriated the money he scattered it out in small amounts and then claimed that these small amounts would constitute separate offenses.

4. Counsel further contend that the court erred in allowing proof by secondary evidence of the note executed by John Ward for $2,050, dated December 13, 1902. He reserved a bill of exception to the introduction of this testimony on the ground that it was secondary and offered as a copy of a copy. The proof disclosed by Miss Lewis and by her counsel, Mr. Holliday, who was a witness in the case, that the note had been lost, and that diligent search had been made for the same and it could not be found. Holliday testified that he had the note when he drew the affidavit against the defendant in the Justice Court, and that he set out the note in said affidavit, and that the note as set out in the affidavit was correct, and was an exact copy of the original. Mr. Warren Moore, who was district attorney, testified that when he drafted the bill of indictment in the case against the defendant, that he set the note out in the exact language as contained in the affidavit. There is no such thing as degrees in secondary evidence. However, if the court should have been in error in this respect, the error was harmless, because in the statement that the defendant made to Miss Lewis, he stated that he had loaned this money out on a note. He turned the note over to Miss Lewis. Her brother-in-law, Mr. Beck, went to see appellant about it, and carried the note, and asked him about the note, and he admitted to him that it was a forgery, and that no such man existed. We, therefore, hold that the court did not err in admitting the testimony, and the same, if error, would be harmless.

We have examined the record with great care, and are constrained to hold that the proof shows the guilt of the defendant conclusively; that there are no errors of law committed by the trial court. He has had a fair trial, and the judgment will be affirmed.

*Affirmed.*

## ON REHEARING.

### November 23, 1910.

McCORD, JUDGE.—On June 22, 1910, this case was affirmed. Appellant has filed a motion for rehearing and asks that the affirmance be set aside and that the case be reversed and remanded because the facts in the case show that if there was any embezzlement in this case the same was barred by the statute of limitation. The indictment in this case was returned against the appellant on the 28th day of October, A. D. 1905. It charges the offense to have occurred on the 13th day of December, 1902, and alleges the embezzlement of $2,050. The proof showed that Miss Emily Lewis had the de-

fendant to act as her agent and attorney, and that on October 15, 1902 she turned over to the defendant $2,000 to handle and invest for her as her agent. About a year after she 'let the defendant have this money the demand was made on him for the same and he claimed that he had loaned this money on December 13, 1902, to a man by the name of John Ward and exhibited a note for that amount, covered by a mortgage on real property. It was discovered that this note was a forgery and no such man existed and no such property was in existence as was described in the mortgage. The State, after proving the delivery of the $2,000 and $60 to the defendant, proved the agency, the time of the delivery of the money, the demand that was made on the defendant, his representation that he had loaned the money and the falsity of this loan. The defendant then offered testimony of the deposit of this money in the bank by him and that on the same day that he had drawn out the sum of $540 and that at separate times from that day he had drawn out various sums, ranging from $15 up to $150. He makes the contention before this court that the act of embezzlement was complete when he drew out the $540 on the day the money was deposited in the bank and that this completed the offense on that date, and that the same was barred by limitation. We have not been cited to any authority, nor have we been able to find any authority that holds that where a lump sum of money is in the hands of an agent and he uses that money for his own purposes and draws it out, or appropriates it at different times and in different amounts that each withdrawal or appropriation of the sum, will constitute a separate offense; or that the intent would be fixed by his use of the money. This would simply be evidence of the appropriation of the money and the transactions would simply be continuous in their character. The statute makes it embezzlement to misapply, convert and appropriate money or property that may have come into the hands of a person as agent or attorney, or trustee, with a fraudulent intent to deprive the owner of the value of the same. This intent is gathered from the various and sundry acts that go to make up the complete conversions or misapplications which may be continuous in their character, and to hold that each withdrawal from the bank would constitute a separate offense, would be splitting up the transaction and making various and sundry offenses out of one criminal intent. Intent is incapable of direct proof. Therefore, great latitude is necessarily allowed in proving this element of the offense. Broadly speaking, any evidence is admissible which has a tendency, even the slightest, to establish fraudulent intent on the one hand, or on the other hand to show the bona fides of the accused. See Cyc., vol. 15, 529. As said by Judge Clark in the case of Leonard v. State, 7 Texas Crim. App., 417: "What is embezzlement? A fraudulent appropriation of the property of another, by a person to whom it has been intrusted. There is no settled mode by which this appropriation must take

place, and it may occur in any one of the numberless methods which may suggest itself to the particular individual. The mode of embezzlement is simply matter of evidence, and not pleading." The charge in this case is the embezzlement of $2,050, belonging to Miss Emily Lewis, which had been intrusted to the defendant's hands. He had authority to draw this money out of the bank—all at once, or at different times. This act of withdrawal would not be a crime within itself, nor would the several withdrawals constitute different offenses. The first evidence that the State produced in this case of any act of fraudulent appropriation on the part of defendant was on the 17th day of December, 1902, when, for the first time, he makes a note purporting to be the act of one Ward for this money, and in order to deceive Miss Lewis he paid interest on that note for a year. We are constrained to hold that the act of embezzlement in this case took place on the day when he attempted to manufacture testimony to cover up the money that had been intrusted to him by Miss Lewis, and that the different acts of withdrawal of the money from the bank were but continuous acts of his that might be circumstances to develop the criminal intent. When was the criminal intent formed in this case, according to the testimony? Was it when this money was withdrawn from the bank? We do not know. But the State has fixed it as on the 17th day of December, 1902, when he attempted to conceal from Miss Lewis the whereabouts of this money which she had intrusted to him. In the Lawshe case, reported in the 57 Texas Crim. Rep., 32, 121 S. W., p. 865, this court held that where the employment and all the transactions were continuous and the proof raised no issue of an embezzlement of less than $50, it was sufficient to charge the jury that the accused could be convicted of felony if the sum embezzled was in excess of $50 without also charging that before the jury could convict the proof must show an embezzlement at one time of a sum exceeding $50. In the Lawshe case he was agent of the Missouri, Kansas & Texas Railway Company at Sealy, and was agent for the American Express Company, and his duties intrusted him with moneys belonging to these different companies, and he was charged with the embezzlement of moneys belonging to the companies. In that case it was shown that he appropriated moneys at different times and the court gave them a general charge that if he was agent of the Missouri, Kansas & Texas Railway Company, and had in his possession as their agent moneys belonging to them, and that he embezzled and fraudulently misapplied the same of the value of $50 or over they would convict. It was objected in that case that the court erred in not charging the jury that before they could convict, the proof must show an embezzlement at one time of a sum exceeding $50. This court held that it was not necessary for the court to have so charged. This court says: "Under the evidence appellant was entitled to receive the money, and it is for its

fraudulent appropriation when so received by virtue of his agency that he is amenable to law. The testimony shows that the receipts of the office ran from $1,200 to $1,800 per month. The aggregate shortage is shown to be a sum largely in excess of $500. . . . The employment and all the transactions were continuous, nor was the issue of an embezzlement of less than $50 raised." The right of the defendant in this case was continuous to draw the money out of the bank at any time and in any amounts he saw fit, and it can not be said that each withdrawal constitutes an offense and that the fraudulent intent relates to the first withdrawal alone. When it was discovered that the note that defendant had in possession purporting to be executed by Ward was a forgery, the defendant fled the country. He was brought back and placed upon trial. The State relied upon the acts, as before stated, to make out a case and these acts did make out the case. We think limitation does not apply and that the offense was not barred, and, therefore, overrule the motion for rehearing.

*Overruled.*