## DALLAS M. PARNELL V. STATE

No. 30,391. April 29, 1959
Motion for Rehearing Overruled October 14, 1959
Second Motion for Rehearing Overruled February 24, 1960
Third Motion for Rehearing Overruled March 23, 1960
Application for Writ of Certiorari Denied by Supreme Court
of the United States October 10, 1960

DAVIDSON, Judge, dissented.

*Renfro & Johnson* by *C. C. Renfro, J. Edward Johnson,* Dallas, and *Hardeman, Smith & Foy,* by *Dorsey B. Hardeman* and *Earl W. Smith,* San Angelo, for appellant.

*Henry Wade,* Criminal District Attorney, *William F, Alexander, James K. Allen, James M. Williamson, A. D. (Jim) Bowie,* Assistants District Attorney, Dallas, and *Leon Douglas,* State's Attorney, Austin, for the state.

WOODLEY, Judge.

The offense is felony embezzlement; the punishment ten years.

This is a companion case to that of Hamman v. State, 166 Tex .Cr. Rep. 349, 314 S.W. 2d 301.

The count of the indictment upon which the case was submitted to the jury is in form identical with that set out in the opinion in the Hamman case.

All of the relevant events occurred in the year 1955 and early in 1956. Unless otherwise indicated, all dates herein mentioned will refer to the year 1955.

For convenience and brevity, Guy B. Hamman, George S. McGhee and James T. Valentine will be referred to as Hamman, McGhee and Valentine, respectively. Collectively they and appellant will be referred to as the "promoters".

Physicians Life and Accident Insurance Company, a Corporation, the injured party, will be referred to as the Insurance Company. Physicians Investment Corporation will be called the Investment Corporation.

The case was submitted to the jury as one of circumstantial evidence and a conviction was authorized upon a finding by the jury that appellant acted together with Hamman or McGhee or Valentine or R. A. Stuart, or all of them,

That part of the law of principals was given in charge which makes all who are guilty of acting together in the commission of an offense guilty as principals.

The evidence from the state's standpoint is in a large measure shown in our opinion in Hamman v. State, supra. Notes secured by deed of trust liens, assigned to the Investment Corporation by the promoters in exchange for original stock of the Insurance Company at $1.00 per share were, according to witnesses for the state, paid with money belonging to the Insurance Company, without the consent of the Board of Directors, and released to the makers.

To account for the debit to surplus and credit to the Investment Corporation of the funds to pay off these obligations of the promoters, stock certificate stubs were altered to make it appear that stock sold to the public at $11.00 and $14.20 per share months earlier was stock that had been issued to the promoters and transferred by them.

Additional evidence will be set out in connection with appellant's contentions.

A principal contention of appellant repeatedly asserted in connection with various assignments of error will be first disposed of.

The indictment herein was in three counts. The first alleged theft of $225,000.00 from the Insurance Company and the third count alleged that appellant, together with Hamman, McGhee, Valentine and R. A. Stuart entered into a conspiracy to embezzle $225,000.00 belonging to the Insurance Company.

The second count, alleging the embezzlement, alone having been submitted to the jury, it is contended that appellant was thereby acquitted of conspiring with the other promoters. Accordingly, he argues, all evidence tending to show that appellant conspired with the other promoters to embezzle money from the Insurance Company "passed out of the case for all purposes."

Assuming that appellant stood acquitted of the substantive crime of conspiracy, this did not deprive the state and the jury of the evidence tending to establish the conspiracy, including the acts and declarations of his co-conspirators, in considering the charge of embezzlement in pursuance of the common design or

conspiracy. Richards v. State, 53 Tex. Cr. R. 400, 110 S.W. 432; Holt v. State, 39 Tex. Cr. R. 282, 46 S.W. 829; and 9 Tex. Jur., Sec. 14, pp. 392 and 393, are deemed authority contrary to appellant's contention.

Appellant contends that there is no evidence to show that he was present when the offense of embezzlement was committed, if·it was, and for that reason his conviction as a principal rather than as an accomplice should be set aside.

To decide the question here presented we must first determine where and when the embezzlement occurred.

Dallas M. Parnell, appellant, was vice-president, director, member of the executive committee of the Board of Directors and head of the real estate committee of the Insurance Company. He was also president and a director of the Investment Corporation.

Guy B. Hamman was secretary, director and member of the executive committee of the Insurance Company, and was vice-president and secretary and a director of the Investment Corporation.

George S. McGhee was treasurer, a director and member of the executive committee of the Insurance Company and was treasurer and a director of the Investment Corporation.

James T. Valentine was vice-president, a director and member of the executive committee of the Insurance Company, and was vice-president and director of the Investment Corporation.

Collectively appellant, Hamman, McGhee and Valentine constituted majority control and dominated the executive committee of the board of directors of the Insurance Company.

The minutes of the meeting of the executive committee, approving the purchase of appellant's $75,000.00 note, do not disclose the fact that it was signed by or represented the obligation of one of the committee. The banker, according to these minutes, appeared and offered the note for sale, describing the security. It may be significant to note that the bank held appellant's note only as collateral.

The same is true as to the notes of the other promoters which

were acquired by the Insurance Company. The transaction was between the Insurance Company, represented by the makers of the notes who were officers and directors of the Investment Corporation, and the bank which held the notes as collateral for the Investment Corporation's note.

Be this as it may, the notes were later assigned to the Investment Corporation and paid for, and were again pledged to secure the payment of bank loans to the Investment Corporation, appellant's to secure a $75,000.00 note to First National Bank, and Hamman, McGhee and Valentine's notes to secure a $150,000.00 note to Mercantile National Bank.

According to its minutes, appellant was present at a meeting of the executive committee of the Insurance Company on June 8 when a committee was appointed "to arrange necessary financing to repurchase from the * * * Insurance Company * * * certain loans which had been acquired by the Company from the Empire State Bank." Hamman and McGhee were also appointed on the committee, the fourth committeeman being the then President Yost.

Appellant was present at a stockholders meeting and a meeting of the executive committee of the Insurance Company on August 15.

There is no reference to the matter in the minutes of this meeting, however another meeting of the executive committee of the Insurance Company was held on September 17, the stated purpose being: "To consider the matter of *the guarantee of the * * * Insurance Company* to the Mercantile National Bank, as per resolution heretofore passed on the 15th day of August, 1955, as to the payment of a note in the sum of $150,000.00 heretofore executed on August 24, 1955, by the Physicians Investment Corporation to said bank."

Resolution was unanimously adopted on September 17 rescinding the action taken on August 15 "in which the * * * *Insurance Company agreed and issued a letter to the Mercantile National Bank guaranteeing that it would purchase the $150,000.00 note of Physicians Investment Corporation, dated August 24, 1955."* Appellant and the other promoters whose notes secured the $150,000.00 loan to the Investment Corporation were present and formed a majority of the executive committee.

The minutes of this meeting of September 17 recite that the committee was advised that the Investment Corporation had acquired and had in its treasury a sufficient sum of money to pay off and liquidate the $150,000.00 due and payable to the Mercantile National Bank, and that the executive committee of the Insurance Company "felt that said sum should be liquidated."

The executive committee further resolved at said meeting that the Investment Corporation "be called upon to immediately pay off and discharge said obligation to the Mercantile National Bank, of Dallas, *so as to relieve the * * * Insurance Company from any obligation in connection therewith,* and that said letter of agreement be surrendered to the * * * Insurance Company."

Following the meeting of the executive committee of the Insurance Company at 2 P.M. on September 17, at which the Investment Corporation was called upon to pay off and discharge its obligation to the Mercantile National Bank represented by its $150,000.00 note, the same individuals met as the board of directors of the Investment Corporation at 3 P.M. the same day. The promoters constituted the majority at both meetings. R. A. Stuart and E. H. Owen were the only other members of the executive committee and the board of directors who were present at these meetings.

The minutes of the meeting of the board of directors of the Investment Corporation show that the board was advised of the action of the executive committee of the Insurance Company demanding that the $150,000.00 note be paid, and that resolution was passed that it be paid.

The Investment Corporation, or at least Hamman, its vice-president, and McGhee, its treasurer, appear to have anticipated the action that was taken on September 17, for a check had already been issued by the Investment Corporation and delivered the day before, signed by these officers in their official capacity, and $50,000.00 was paid on the $75,000.00 indebtedness to First National Bank. This note was secured by appellant's note and in addition its payment was guaranteed by him.

It will be remembered that the notes of McGhee, Valentine and Hamman, secured by their property, had been assigned to the bank as collateral for the $150,000.00 note, and appellant's note similarly assigned to First National Bank, and that the payment by the Investment Corporation of its indebtedness

would entitle that corporation to a return of these collateral notes.

We find, however, that on October 3 Hamman's note and lien were transferred by the bank to the Investment Corporation and on the same day were released to him by the Investment Corporation.

It was well known to appellant and the other promoters that the only fund from which the $150,000.00 note could be paid by the Investment Corporation was the money which had come into its hands from the proceeds of stock sold by it for the Insurance Company. This money belonged to the Insurance Company.

*There is evidence tending to show that, from the beginning, it was the intention of the promoters that their notes, for which they had received shares of stock at $1.00 per share, would be retired by the sale of a part of the stock at a larger sum.*

A voting agreement was entered into prior to the execution of the notes in which it was agreed that a certain number of shares would be placed in escrow with the Investment Corporation, to be sold for that purpose at not less than $7.50 per share. Appellant agreed to place 10,667 shares for that purpose.

A second agreement was signed by the promoters in July. This was after sale of stock at $11.00 per share under the 25,000 share offer of May 1 had been oversubscribed and while stock of the company was being sold under a second prospectus offering an additional 25,000 shares at $14.20 per share was in progress.

In the July agreement appellant and McGhee agreed to deposit in escrow with the Investment Corporation 9,605 shares each; Hamman 6,410 shares and Valentine 3,199 shares. These shares were to be sold for not less than $11.00 per share (except with written consent of all parties) ; block sales were to be pro-rata; proceeds, less 20% commission, were to be credited to a sum to repurchase by the former owners certain real estate mortgages transferred by the owners in exchange for stock in the Investment Corporation and the Insurance Company, listing the mortgages by name and amount, McGhee and Parnell $75,000.00 each, Hamman $50,000.00 and Valentine $25,000.00.

The Securities Act (Art. 579-1 to 579-42 V.A.C.S.) went into effect September 6. After that date no further stock was or could be lawfully sold by the Investment Corporation for either the Insurance Company or the promoters unless and until the requirements of the Act were complied with.

Appellant testified that on September 7th and 8th President Yost and Stuart, attorney for the Insurance Company, "reported to a group of us that it looked like we were in trouble, and somebody was going to have to furnish stock from some source" to cover the oversubscription.

An audit began September 19 and final report was made November 2, pursuant to the resolution of the executive committee of September 17. The audit was restricted to the capital structure.

During the audit, according to the testimony of Mr. Kernaghan of the auditing firm employed, "somebody asked us to figure out something for them one afternoon * * * it was largely, my recollection, a problem in mathematics to prorate among those five gentlemen a pre-determined figure based on some number of shares that they gave us, as to proportion it between themselves * * * it was a very minor thing at the time. It was just not part of our engagement."

Work sheets and lists were prepared in compliance with the request by the auditors. Hamman directed Mrs. Genevive Watson, his secretary, "to make the transfers as set out on that list." Mrs. Watson then changed the stock certificate stubs shown on the list, totaling 3755 shares, so as to cause it to appear that original stock purchased from the Insurance Company, the net receipts to be "used to embark upon a full scale insurance business" and "to fulfill an expanded business program," was instead transferred from stock certificate No. 288 which had been issued to appellant for 9,605 shares at $1.00 per share.

Certificate stubs of other stock of the company sold to other members of the investing public were altered in like manner so as to falsely show that the certificate represented stock assigned from Hamman, McGhee, Valentine, R. A. Stuart or appellant.

As a result of these cancellations, falsifications and alterations, $175,801.68 was credited to the Investment Corporation

on the books of the Insurance Company as of September 30. *Debit was to Surplus.*

Molnor, the regular auditor of the Insurance Company, then prepared a similar calculation as to the stock necessary to satisfy the remaining mortgages in like manner, appellant's portion being 4583 shares.

On December 14 check for $25,886.00 was issued to First National Bank on the account of the Investment Corporation in said bank. It was signed by Hamman and McGhee, and appellant was asked to deliver it to the bank.

Appellant testified that he objected to his note being paid at that time; that a tax problem was involved, and he declined to deliver it.

On December 28 appellant delivered to Hamman additional certificates issued to him by the Insurance Company endorsed in blank.

Appellant testified that such stock "was to be used as previously discussed with major stockholders, donating a part of their stock back to the company."

The check dated December 14 was delivered to the First National Bank on January 3, 1956, and on the following day appellant received his note and the release of his property mortgaged to secure it.

Appellant's defense was rejected by the jury. The jury was instructed to acquit if they believed or had reasonable doubt: (1) that appellant did not fraudulently intend to misapply, embezzle or convert to his own use money belonging to the Insurance Company; (2) if he did misapply and convert said money but thought he had a legal right to act in the manner in which he did; (3) if he believed that he had a legal right to use and deal with the money alleged to have been embezzled, and so believing that he or they (Hamman, McGhee, Valentine and R. A. Stuart) had said legal right, committed the acts alleged in the second count of the indictment; (4) that appellant was advised by attorneys and employees of the Insurance Company or the Investment Corporation that he had the legal right to apply the money as alleged, and acted upon such advice in good faith believing it to be true.

The entry of $175,801.68 as a debit to surplus and credit to accounts receivable Investment Corporation as of September 30 was explained on the books as "Stock sold by Investment Corporation for individual stockholders, proceeds of which were erroneously transferred to the Insurance Company (See letter in general voucher file)."

The letter referred to was apparently the original of which a copy was offered in evidence setting out the shares which "have been transferred in accordance with our previous conversation" and listing the number of shares of the promoters and of Stuart cancelled, the number transferred and the number re-issued, and the number of such shares which were $11.00 stock (May 1 offer) and $14.20 stock (July 1 offer) respectively.

The mortgage notes of the promoters were released to them after the Investment Corporation's notes to the banks were paid. Hamman received his release on October 2 (before the list of the "transfers" to be made was prepared, from which list the $175,801.68 was credited to the Investment Corporation as of September 30). Valentine's note and lien were released, the date not being shown. Appellant received his cancelled note and release of his properties on January 3, 1956. McGhee's note and lien were released on January 13, 1956.

The jury was authorized by the charge of the court to convict upon a finding that appellant embezzled any part of the $225,000.00 of the value of over $50.00 any time within the period of limitation before the return of the indictment.

We conclude that the jury was warranted in finding that the offense of embezzlement was committed as alleged; that the offense was committed in pursuance of a common design and intent and during the existence of such intent and conspiracy, and was not fully consumated until the mortgage notes executed by the conspirators were released to them.

We further conclude that there is sufficient evidence to sustain a finding by the jury that appellant acted as a principal in the embezzlement and misapplication and was present at its commission.

There is no settled mode in which appropriation of money or property of the principal by the officer authorized to receive and handle it must take place. It may occur in numberless ways,

and the appropriation consumated in any manner capable of effecting it.

In many classes of cases the question as to what acts are sufficient to show an appropriation is one of great difficulty.

So long as the person entrusted with the money or property of another acts in accordance with the terms of his trust in reference thereto he is not guilty of embezzlement. He may deposit the money of his principal in the bank in his own name without being guilty of appropriating it. But a withdrawal by him for purposes of his own constitutes appropriation, 16 Tex. Jur. 70; or constitutes evidence of conversion. 16 Tex. Jur. 38, 39.

Whether the conversion took place when the deposit was made or at the time of withdrawal is generally immaterial. Stephens v. State, 49 Tex. Cr. R. 489, 93 S.W. 545.

Whether the release by the Investment Corporation of the collateral notes of the officers of the Insurance Company, following the payment of the banks' notes with insurance company funds, established a conversion of such funds by such officers would depend upon their intent. *But the acceptance by these officers of their notes and the release of the securities and property pledged to secure their payment based upon their having been paid with funds of their principal constituted the appropriation of the money to their own use, and was evidence of their fraudulent intent.*

The date of the offense is sometimes of great importance as in connection with limitation.

As appropriation piece meal followed by a fabricated note to back up a defense may be considered as one embezzlement or conversion, the time being when the fictitious note was drawn, such act being a clear manifestation of intent to convert the whole sum entrusted to him. Hamer v. State, 60 Tex. Cr. R. 341, 131 S.W. 813.

People v. Stanford, 105 Pac. 2d 969, is cited in appellant's brief, and points out that in larceny the defendant has obtained possession of his victim's property by wrongful means, and completion of the offense is not dependent upon whether he appropriates the fruits of his theft by a single act or at sucessive

intervals. On the other hand, in the case of embezzlement the property is already in rightful possession of the defendant, and his subsequent fraudulent appropriation is of the essence of the crime.

The record here shows a single impulse to apply money belonging to the corporation to the payment of the obligation of appellant and his confederates. *There were a number of transactions which culminated in the surrender of these obligations to the respective parties.* The embezzlement and the common design was completed by the release of the notes and securities to the debtor, freeing him from the obligation to pay the same. Appellant was present when the payment from money belonging to the Insurance Company was ordered paid, and when his cancelled note and release of lien was delivered to him.

We find no error in the failure of the court to instruct the jury that the State Witness E. H. Owen was an accomplice witness, or to submit the issue to the jury as to whether he was an accomplice.

Owen was present and participated in the meetings of September 17 which authorized and ordered the payment of the $150,000.00 note to Mercantile Bank. He testified that he was present when the suggestion was made that stock which had been issued at $1.00 per share be substituted for stock sold to the public at $11.00 and $14.20 per share. He further testified that he declined to furnish stock for such purpose and stated that it would in effect be stealing. He was not indebted to the Insurance Company or to the Investment Corporation. When he learned that the promoters' notes had been paid and released by the substitution of part of their stock for company-sold stock he reported the matter to the district attorney and to the Insurance Commission.

Appellant assigns as error, for which the judgment should be reversed, the overruling of a number of motions for mistrial based upon the propounding of questions to appellant on cross-examination. In view of the court's instruction to the jury to disregard these questions we do not regard the matters as of such prejudicial nature that a mistrial should have been granted.

The judgment is affirmed.

## ON MOTION FOR REHEARING

MORRISON, Presiding Judge.

When this case was submitted originally, it received our most careful attention especially because of its complexity. In our opinion we discussed those of appellant's contentions which we deemed controlling. On rehearing we have carefully examined appellant's motion and remain convinced that there is no error which would warrant a reversal.

Accordingly, appellant's motion for rehearing is overruled.

DAVIDSON, Judge (dissenting).

I have concluded that this conviction cannot and should not be affirmed under this record. In support of that conclusion, I submit the following:

Here, the indictment upon which this conviction rests charged, in effect, that appellant, as an officer, servant, and employee of the Physicians Life and Accident Insurance Company of America embezzled by converting to his own use "two hundred twenty five thousand dollars in current money of the United States" which belonged to the insurance company and which had come into his possession by reason of his aforesaid fiduciary relation to the insurance company.

There was no allegation in the indictment that appellant acted with any other person or persons in committing the alleged embezzlement.

In keeping with the mandate of Art. 1534, P. C., the trial court instructed the jury that four elements were necessary to establish the crime of embezzling: (See, also, Fellers v. State, 138 Tex. Cr. R. 307, 136 S.W. 2d 217.)

"1. That the defendant was the agent of the person or corporation, as alleged, and by the terms of his employment was charged with the duty of receiving the money of his principal.

"2. That he did so receive the money belonging to his principal.

"3. That he received it in the course of his employment.

"4. That he embezzled, misapplied or converted it to his own use, without the consent of his principal or employer."

The case was also submitted under the law of principals, by the following charge:

" * * * All persons are principals who are guilty of acting together in the commission of an offense, and principals, whether jointly indicted or not, may be legally prosecuted and convicted as such, *provided the evidence adduced against each clearly and satisfactorily establishes the guilt of each.* Where an offense has been committed, the true criterion for determining who are principals is, 'Did the parties act together in the commission of the offense?' 'Was the act committed in pursuance of a common intent, and in pursuance of a previously formed design in which the minds of all united and concurred?' If so, then the law is that all are alike guilty, provided the offense was actually committed during the existence and in execution of the common design and intent of all, whether in point of fact all were actually bodily present on the ground where the offense actually took place or not. * * * "

In connection with and as a part of that charge, the jury were told, in effect, to convict appellant if they believed that he, alone or "acting together with G. B. Hamman, or George S. McGhee, or James T. Valentine, or R. A. Stuart, or all of them," embezzled as much as $50 in money belonging to the insurance company.

It was under such indictment and charge that appellant was convicted.

I have concluded that the charge upon principals was neither pertinent nor authorized under the allegations contained in the indictment and under the facts in evidence.

While it may be true that, generally speaking, all persons are principals who are guilty of acting together in the commission of a crime, such is not true and can not be true of the crime of embezzlement, which is the offense here charged and for which appellant has been convicted.

The reason for that statement lies in the fact that only members of a certain class can commit the crime of embezzlement. Unless one is within or is a member of that class he can not be guilty of embezzlement.

The class mentioned is comprised of those who bear a fiduciary relation to the injured party, such as an officer, a clerk, an employee, or an attorney at law or in fact of an incorporated company (Art. 1534, P. C.).

The indictment in this case alleged only that the appellant was guilty of the crime of embezzlement, in that he, as an officer, agent, servant, and employee of Physicians Life and Accident Insurance Company of America, embezzled the money of that company. The indictment did not allege that the others, or any of them with whom the appellant was acting, were members of the class that could be guilty of embezzling money of the insurance company.

Notwithstanding such fact, the jury was authorized to convict appellant if he acted with such other persons in embezzling money from the insurance company. In other words, if the jury believed that Hamman, McGhee, Valentine, and Stuart, or any of them, embezzled as much as $50 from the insurance company and that appellant acted with them or any of them in the commission of that embezzlement he would be guilty.

Such is not the law, and is not a correct legal principle applicable to this case.

The case of Quillin v. State, 79 Tex. Cr. R. 497, 187 S.W. 199, is directly in point. The crime there involved was one which could be committed only by members of a class—that is, by a public officer charged under the law with receiving public funds. The public officer there involved was one Druesedow, Harris County tax collector, who the indictment alleged embezzled funds of that county which came into his possession by virtue of his office. Quillin was not an officer of the county and was not a member of the class which could commit the offense of embezzlement of county funds. To constitute Quillin a principal to the commission of embezzlement by Druesedow, the indictment contained the additional allegation that he, Quillin, acted with Druesedow in the commission of the offense charged. Quillin's guilt was dependent upon the guilt of Druesedow as the guilty officer.

Upon appeal, Quillin insisted that inasmuch as he was not one of the class to which the offense charged applied he could not be guilty, either alone or as a principal with Druesedow.

The contention was overruled by the court after a lengthy discussion, the court pointing out the following:

"If the offense in this instance had been murder, arson, rape, or any other felony, it would have been wholly unnecessary to have made any allegation at all about Druesedow. Quillin could have been charged directly with having committed the offense, although Druesedow was merely a principal by reason of what he did or said. It was only because under this particular law Druesedow was in a class who alone could directly commit such a crime that it was necessary to allege what he did at all. Then, after making the necessary allegations which the indictment did as to Druesedow, it was only necessary as to Quillin to allege as it did, that he did unlawfully, willfully, and fraudulenty act together with Druesedow in the commission of the said offense; this is the very language of the statute. No other allegation whatever as to what Quillin said or did was necessary."

What that case holds is that (a) one not a member of the class to which the statute applies may be guilty of violating the statute by acting with one who is a member of the class; (b) for a non-member of the class to be guilty of acting with a class member in the commission of a crime the indictment must allege that the non-class member acted with the class member in its commission; and (c) under no circumstance can one be guilty of violating a law applicable only to a class unless it is shown that he was the principal offender and a member of that class or that he acted with the principal offender who was a member of the class to which the statute applies.

As supporting that conclusion, see 12 Tex. Jur., p. 332, 5 A. L. R. 773; 144 A. L. R. 597; and 131 A. L. R. 1322.

In the instant case, then, Hamman, McGhee, Valentine, and Stuart, or any of them, could not be guilty of acting with appellant in the commission of the embezzlement, there being no allegation in the indictment that said parties acted with appellant in the commission of the crime of embezzlement.

For the same reason and by the same process of reasoning, appellant could not be guilty because he acted with said parties or any of them in the embezzlement. In other words, under this indictment for the offense of embezzlement only appellant, and he alone, could have been convicted for that crime and he could be convicted thereof only upon proof that he committed the crime. He could not be guilty of aiding Hamman, Valentine, McGhee, and Stuart, or any of them, in committing the embezzlement. Such persons were not alleged as occupying a fiduciary relation to the injured company so as to bring them or any of them within the class to which the crime of embezzlement applies.

Such being true, there was no occasion to submit this case upon the law of principals, for that law had no application under the allegations of the indictment. Appellant's guilt under the indictment being restricted to proof that he, himself, committed the embezzlement rendered the charge on principals entirely uncalled for and wholly irrelevant.

The submission of the case upon the law of principals and allowing appellant's conviction thereunder could not have any effect, therefore, other than to injure the rights of the appellant by authorizing his conviction for a crime upon facts which did not constitute such crime under the allegations of the indictment.

The undisputed evidence shows that on May 3, 1955, Hamman, as vice-president, and McGhee, as treasurer of the insurance company, drew a check payable to the Empire State Bank in the sum of $75,383.34 against funds of the insurance company on deposit with said bank.

On May 31, 1955, Yost, as president, and Hamman, as secretary of the insurance company, drew a check payable to the Empire State Bank in the sum of $25,205.55 against the funds of the insurance company on deposit with that bank.

On July 11, 1955, Yost, as president, and Hamman, as secretary of the insurance company, drew a check payable to the investment corporation in the sum of $124,507.88 against the funds of the insurance company on deposit with the Empire State Bank.

On the same day (July 11, 1955), the investment corporation, to which the above check was payable, drew a check through

Geo. S. McGhee, as treasurer, by G. B. Hamman, against the funds of the investment corporation on deposit with the Empire State Bank, payable to that bank in the exact amount ($124,507.88) of the above mentioned check.

By these two checks the insurance company transferred to the investment corporation $124,507.88, which amount the investment corporation paid to the Empire State Bank.

Each and every one of the checks drawn against the funds of the insurance company bore the notation that same was in payment of first lien notes and mortgages.

I have expressly referred to the three checks drawn on the funds of the insurance company to demonstrate that those are the only checks in this record through and by which funds of the insurance company were withdrawn from any bank.

The injury to appellant by the giving of the charge on principals is thus demonstrated, for the jury were authorized to convict appellant if he acted with the drawers of any of those checks in embezzling the funds of the insurance company.

While it is true that appellant did not level an exception to the charge for the reason that the case was erroneously submitted upon the law of principals, yet his exception seeking to have the law of principals applied to the facts and seeking a charge upon the converse thereof is deemed sufficient to call to the trial court's attention the error in submitting the case upon the law of principals.

However, whether a proper exception was or was not reserved to the charge is, in my opinion, wholly immaterial. The authorizing of appellant's conviction upon facts not constituting the offense charged or within the allegations of the indictment was fundamentally erroneous.

In addition to the error discussed, I am convinced that the facts do not show appellant guilty of the crime of embezzlement. First, let it be understood that there is no showing that appellant received and converted to his own use any money belonging to the insurance company. The checks drawn were not payable to him. The money from the checks went to the investment corporation.

The theory upon which this case was tried and the conviction obtained is very clearly and pertinently set forth in the brief for the state wherein it is said:

"* * * appellant and his co-promoters (meaning Hamman, McGhee, and Valentine) caused the Life Company to transfer sufficient funds from the sale of its primary stock to the public to the Physicians Investment Company, which Investment Company used the money to pay off the personal notes of the promoters, including appellant Parnell."

In affirming this conviction the majority opinion adopts and accepts that theory and states as follows:

"But the acceptance by these officers (appellant, Hamman, McGhee, and Valentine) of their notes and the release of the securities and property pledged to secure their payment upon their having been paid with funds of their principal constituted the appropriation of the money to their own use, and was evidence of their fraudulent intent."

So it definitely appears that there is no showing and the state appears not to contend that the money of the insurance company on deposit in the bank was in appellant's possession, or that he had received and come into possession of that money for and upon behalf of the insurance company in the course of his employment as an officer, agent, or employee of the insurance company.

To the contrary, the money was in the actual possession of the bank and in the constructive possession of those officers of the insurance company who signed the checks by which the money from the bank was withdrawn, appellant not being one of such officers.

It is apparent, therefore, that appellant is here adjudged to be guilty of the crime of embezzlement because, as an officer in the insurance company, he permitted the funds of the insurance company to be used to acquire his note from the owner thereof, viz, the investment corporation—and this, under an indictment which charged that appellant converted to his own use money which belonged to the insurance company.

In other words, it is here, in effect, judicially determined and announced as a correct proposition of law that when a cor-

poration purchases an automobile with a check of that corporation signed by its officers and that automobile is thereafter stolen by one of those officers the officer may be prosecuted for and convicted of embezzling or stealing the money with which the automobile was purchased, rather than the embezzlement or theft of the automobile, itself.

To such holding I do not and can not agree.

In the first place, I know of no rule of law more thoroughly established in this state than that which says that to be sufficient to convict the proof must establish the material allegations of the indictment and that unless it does so establish a conviction can not stand. 21A, Tex. Digest, p. 212, Key 171, and authorities there collated.

Under the law, appellant was warranted in assuming that the state would be required to prove and that his guilt or innocence would be made to depend solely and alone upon evidence showing that he embezzled "current money of the United States," which means, according to Art. 1544, P. C., "gold, silver, copper, or other coin, bank bills, government notes, or other circulating medium current as money."

In his charge, the trial court authorized the jury to convict appellant only if he embezzled or acted with Hamman, McGhee, Valentine, or Stuart in embezzling " * * * any amount of money of the value of fifty dollars or over, belonging to the Physicians Life and Accident Insurance Company of America * * * ."

Where is the evidence which shows that the state discharged the burden assumed by it to prove the embezzlement of money? Where is the evidence which authorized the jury to find that appellant embezzled money? Those questions are answered in the negative by the facts in this case. There is no evidence that appellant embezzled and converted to his own use any "current money of the United States" belonging to the insurance company.

State's counsel admits and my brethren, in affirming this conviction, agree that appellant's guilt depends solely upon the conversion by him of his own promissory note which was purchased or obtained with funds of the insurance company in the actual possession of the bank upon which the check was drawn.

It is apparent, therefore, that when this conviction is affirmed under these facts, it is no longer the law of this state that the evidence in order to be sufficient to sustain a conviction must establish the material allegations of the indictment.

But the error does not stop there. The conviction is affirmed for the embezzlement of property neither described nor alleged in the indictment.

I had always understood that it was the burden of the state, especially in theft or embezzlement cases, to describe in the indictment the property alleged to have been converted at least sufficiently to identify it and to place the accused on notice of the accusation against him.

However, this is no longer the rule. All that is now necessary is that the indictment allege the embezzlement of some personal property. Under such an allegation the state can then prove the embezzlement of any personal property of any description or character.

This appellant is convicted of embezzling a promissory note which is neither described nor identified in any particular in the indictment.

Yes, the rule no longer exists which says that one accused of crime is entitled to know from the indictment the offense with which he is charged with having committed and to know from the indictment the property he is alleged to have embezzled.

All those matters pale into insignificance, however, when compared to the failure of the indictment to allege the value of the note which was alleged to have been embezzled. The allegation of value of the property stolen or embezzled is jurisdictional and must be stated in the indictment. The penalty ascribed renders the offense of embezzlement either a misdemeanor or a felony. Arts. 1421, P. C., 1422 Vernon's P. C., and 1534 P. C.

Jurisdiction of a trial court over a criminal case embodies the following three essential elements, viz., (1) jurisdiction over the subject matter, (2) jurisdiction over the person, (3) jurisdiction to render the particular judgment which was rendered.

If any one of these jurisdictional elements or factors is lacking, the judgment rendered is fatally defective and void. 12 Tex. Jur., Sec. 111 at page 386.

The indictment in this case conferred jurisdiction on the district court to determine the issue as to appellant's guilt of embezzling money in excess of $50 in value from the insurance company—which was the subject matter to be determined. It did not confer jurisdiction upon the trial court to try and to convict appellant of another and different offense—that is, embezzlement of a promissory note.

Appellant's arrest under that indictment conferred jurisdiction of the trial court over his person to try him for the offense alleged in the indictment.

The first two essential elements—that is, jurisdiction of the subject matter and of the person—were shown in the trial court only to the extent contained in the indictment.

What about the third requisite? The judgment rendered herein was based upon the undisputed evidence which showed that appellant was not guilty of the offense of embezzling money, as charged in the indictment. When the evidence failed to establish that jurisdictional element, the trial court lost jurisdiction to render any judgment other than one finding appellant not guilty.

Jurisdictional authority did not exist which would authorize the adjudication of appellant as guilty of some other offense or of the embezzlement of property not described in the indictment.

There being no allegation in the indictment that the note alleged to have been embezzled was of a value of $50 or over, the district court did not have jurisdiction to render the judgment which was here rendered adjudiciating appellant guilty of embezzling a note of the value in excess of $50, a felony.

I now call attention to the rule of law which I pointed out in my dissenting opinion in the case of Cage v. State, 167 Tex. Cr. R. 355, 320 S.W. 2d 364, as to the distinction between the crime of embezzlement and that of theft, wherein I quoted from 18 Am. Jur., Embezzlement, Sec. 12 p. 577, as follows:

" 'The principle is well established that an essential element of embezzlement is the conversion of the property law-

fully in the possession of the accused. If the property is in the actual or constructive possession of the owner, the offense is larceny * * * . Generally, it may be said that mere custody of property as distinguished from possession does not suffice to support an accusation of embezzlement * * * . The reason for this rule is that if a person gains possession of property so as to constitute only a bare charge or custody, such custody does not divest the possession from the true owner and the appropriation of the property under such circumstances amounts to larceny, and not embezzlement.' "

Such rule is applicable here. The note which appellant was alleged to have stolen was in the constructive possession of the insurance company after its funds had gone into the purchase of the note. If appellant obtained the note, he obtained only the custody thereof without divesting the insurance company of its ownership as well as possession of the note, and the offense he committed thereby was that of plain theft of the note.

The value of the note rested in the obligation of appellant to pay and in the securities guaranteeing the performance of that obligation. Mere possession of the note by appellant did not destroy that obligation or its value. The insurance company owned the note and the obligation. Appellant's acquisition thereof did not destroy the note or the obligation.

In this connection, I call attention to the fact that in theft cases it is only necessary that the thief take the property with intent to appropriate it to his own use and benefit. Art. 1410, P. C.

Such is not true of the crime of embezzlement. To be guilty of that crime the embezzler must actually embezzle and convert to his own use the property embezzled.

In conclusion, absolute candor impels me to admit that when I agreed to the affirmance of this conviction originally I did not understand or recognize in this record the errors which I have here pointed out.

Being now convinced that this conviction should not be permitted to stand because of the reasons set forth, I should not hesitate to say so.

I respectfully dissent.

ON SECOND MOTION FOR REHEARING

MORRISON, Presiding Judge.

Appellant forcefully challenges the conclusion in our original opinion that the money which was embezzled *belonged* to the insurance company and again calls our attention to the fact that the checks which were used to pay off the promoters' notes were drawn on the investment company and not the insurance company. The answer to such contention lies in the entry made in the insurance company books which showed that the insurance company had transferred on its books the sum of $175,801.68 to the investment company with the notation, "Stock sold by investment company for individual stockholders, proceeds of which were erroneously transferred to insurance company." Whether or not the funds had been "erroneously transferred to the insurance company" is not the question. It was the act of making this entry that took money from the insurance company and placed it in the investment company, where it was used to pay off the notes, that made the embezzlement here charged possible.

We have again carefully considered the entire record and cannot bring ourselves to agree with appellant's contention that no crime has been shown or that it would be impossible for a majority of the officers and directors to embezzle corporate funds merely because they constituted such a majority.

Remaining convinced that we properly disposed of this cause originally, appellant's second motion for rehearing is overruled.

DAVIDSON, Judge, (dissenting).

It occurs to me that in endeavoring to justify the affirmance of this case my brethren have but confounded the issues and compounded their error. They now justify the affirmance of this conviction by saying that:

"It was the act of making this entry that took money from the insurance company and placed it in the investment company where it was used to pay off the notes that made the embezzlement here charged possible."

So there now appears to be an admission that the funds, if any, used to pay off appellant's notes belonged to and were in

the possession of the investment company, and in no event were such funds the property of the insurance company or in its possession at the time.

The book entries took no cash from the insurance company. The cash account of that company was not disturbed. The company had just as much money immediately after the transaction as it had immediately before.

All the insurance company had or was entitled to was an account receivable from the investment company.

This was not money. No checks were drawn on or paid by the insurance company. All the entry represented was a bookkeeping transaction, with a simultaneous reduction of a paper asset and a paper liability by the equivalent amount.

The state charged this man with embezzling money. It is for that offense that he has been convicted. It is for embezzling money of the insurance company that he goes to the penitentiary.

The evidence does not show or warrant his conviction for that offense.

Mere bookkeeping entries are not money.

I dissent.